622 F.2d 349
 Roger BISHOP, Appellant,
v.
Robert C. TICE, Jr., Individually and in his official
capacity as Regional Administrator, Occupational Safety and
Health Administration, United States Department of Labor;
Joe Ansley, Individually and in his official capacity as
Regional Auditor, Occupational Safety and Health
Administration, United States Department of Labor; and John
Miles, Individually and in his official capacity as Regional
Auditor, Occupational Safety and Health Administration,
United States Department of Labor, Appellees.
 No. 79-1607.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 11, 1980.
Decided May 16, 1980.
 
 James F. O'Hara, Little Rock, Ark., for appellant.
 Terry L. Derden, Asst. U. S. Atty., Little Rock, Ark., argued, George W. Proctor, U. S. Atty. and Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark., on brief, for appellees.
 Before GIBSON, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 In this diversity action, Roger Bishop appeals from the dismissal of his complaint against three employees of the federal government. The complaint alleged, inter alia, that defendants had coerced Bishop into abandoning his job as a federal safety engineer by threatening to lodge false criminal charges against him. The district court[1] held that the complaint failed to state a claim upon which relief could be granted. We reverse, holding that Bishop has stated actionable damage claims for denial of procedural due process, for contractual interference, and for fraud and deceit.
 
 I. Background
 
 2
 According to the complaint, Bishop and the three defendants were employees of the Occupational Safety and Health Administration (OSHA), an agency of the federal government. Bishop was a "career status" safety engineer, defendants Joe Ansley and John Miles were regional auditors, and defendant Robert C. Tice was regional administrator. The alleged incident occurred in Little Rock, Arkansas, and the parties agree Arkansas law applies. The gravamen of the complaint, which in this posture of the case we must take as true, states as follows:
 
 
 3
 7. In early February, 1975 (1976?), Defendant Ansley and Defendant Miles visited the (Little Rock) office of O.S.H.A. purportedly for the purpose of conducting an audit of local operations. The true purpose behind the visit of Defendants Ansley and Miles was to force two resignations in the Little Rock office in order that these positions could be filled at the direction of Defendant Tice.
 
 
 4
 8. On or about February 10, 1976, Plaintiff was called into the office of Mr. James Brown, Area Director (of the Little Rock office). In the presence of Mr. Brown and other witnesses whose names are unknown at present, Defendants Ansley and Miles stated that Mr. Tice wanted Plaintiff's resignation. Defendants Ansley and Miles further stated that in the event that Plaintiff did not choose to resign, all three Defendants would proceed to lodge criminal charges against Plaintiff. When questioned by Plaintiff, Defendants Ansley and Miles refused to state the nature, much less the details, of the charges with which Plaintiff was accused. Plaintiff's request for ten days to reach a decision on the matter was denied after Defendants Ansley and Miles spoke with Defendant Tice (who was in Dallas) over the telephone. Defendants Ansley and Miles told Plaintiff he had one hour to make up his mind and that Plaintiff could not leave the room. Plaintiff's request to consult an attorney was similarly denied. Plaintiff was thus forced to resign his position.
 
 
 5
 9. Since the date of his resignation, Plaintiff (has) repeatedly requested from Defendant Tice a statement of the reasons why the Defendants forced him to resign. On June 15, 1977, Mr. Ronald Gaswirth, Regional Solicitor promised that he would provide Plaintiff's attorney with a list of reasons within "ten days". Defendant Tice and Mr. Gaswirth have failed and refused to honor their agreement. After numerous requests, Plaintiff has not been provided any statement in support of Defendant's action.
 
 
 6
 The theories of recovery asserted in the complaint were (1) defamation, (2) deprivation of liberty and property without due process, (3) contractual interference, and (4) conspiracy to defraud and deceive.
 
 
 7
 Bishop first sued the defendants in both their official and their individual capacities. The initial complaint sought reinstatement, back pay, additional compensatory damages, and punitive damages. Bishop's amended and substituted complaint, against the defendants as individuals only, dropped the request for reinstatement and back pay but continued the request for damages.
 
 
 8
 The district court granted defendants' motion, under Fed.R.Civ.P. 12(b)(6), to dismiss the amended complaint in its entirety. The court's first holding, not disputed on appeal, was that Bishop's common law defamation claim was barred by a one-year statute of limitations, Ark.Stat.Ann. § 37-201.[2] In addition, the court held there was no constitutional claim for damages arising from defamation because damage to reputation alone "does not raise a denial of liberty issue within the meaning of the due process clause of the Fifth Amendment, Paul v. Davis, 424 U.S. 693 (, 96 S.Ct. 1155, 47 L.Ed.2d 405) (1976)," Bishop v. Tice, No. LR-C-77-310, slip op. at 2 (E.D.Ark. June 7, 1979). The court also dismissed Bishop's claim for deprivation of employment rights and his claim for contractual interference, explaining that
 
 
 9
 (t)he plaintiff's remedy for an adverse act of an agency administrator relating to his employment rights, such as a forced resignation, is under his contract, see Kuhn v. National Association of Letter Carriers, Branch 5, 528 F.2d 767 (8th Cir. 1976). * * * The plaintiff here has not alleged that he has exhausted his administrative remedies, a necessary step before relief relating to his employment rights can be sought in the courts. See, e.g., Pascal v. United States, 543 F.2d 1284 (Ct.Cl.1976); 25 A.L.R.Fed. 443, 454.
 
 
 10
 Id. Finally, the court held that Bishop's fraud and deceit claim, to the extent it was distinguishable from his other claims, was insufficient because the complaint did not assert that defendants had falsely represented their intent to lodge criminal charges.[3]
 
 
 11
 On appeal, Bishop argues the complaint states a cause of action for damages under three theories: (1) defendants arbitrarily deprived Bishop of employment rights, his reputation as a good civil servant, and his right to seek administrative redress, giving Bishop an action in damages for infringement of his Fifth Amendment right to due process; (2) defendants fraudulently represented that they would lodge criminal charges against Bishop if he did not resign, giving Bishop an action for fraud and deceit; (3) defendants' threats were unjustified and prevented Bishop from performing his employment contract, giving Bishop an action for tortious interference with prospective contractual advantage. The defendants, beyond disputing these assertions, argue they enjoy absolute immunity from any liability on Bishop's state law claims (theories (2) and (3) above). We shall examine these contentions in sequence.
 
 II. The Due Process Claim
 
 12
 To determine whether a complaint states an actionable claim for damages under the Constitution, we must look to see if (1) the complaint asserts a constitutionally protected right, and (2) the complaint states a cause of action for damages that asserts that right. Davis v. Passman, 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979).
 
 A. Constitutionally Protected Right
 
 13
 The Fifth Amendment forbids the federal government to deprive a person of liberty or property without due process of law. Bishop's complaint invokes the amendment as authority to recover damages against the defendants for the loss of his job, for mental anguish, and for his inability to re-secure federal employment, all on the basis that defendants arbitrarily deprived him of (1) employment rights and his good reputation as a civil servant, and (2) his right to seek administrative redress for his ouster.[4] We shall refer to these claims as Bishop's substantive due process and procedural due process claims, respectively. As to either claim, Bishop must, to assert a constitutionally protected right, allege (a) governmental action to his detriment, and (b) implication of either a property interest or a liberty interest. We conclude that these requirements have been satisfied.
 
 
 14
 The government contends that the complaint, against the defendants as individuals and not in their official capacity, fails to allege governmental action. We disagree. First, suing an individual in his capacity as an officer of government, while necessary to secure relief from the government, is not indispensable to an allegation of governmental action. An individual officer of government may be personally liable for damages for actions that have deprived the plaintiff of his constitutional rights. See, e. g., Butz v. Economou, 438 U.S. 478, 485, 98 S.Ct. 2894, 2900, 57 L.Ed.2d 895 (1978); Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). Second, although defendants' alleged actions were private in nature in the sense that any private individual could threaten to lodge criminal charges,[5] the complaint fairly implies that defendant Tice directed defendants Ansley and Miles to make their threats through an exercise of his official authority as OSHA regional administrator. The complaint therefore alleges that Bishop sustained his damages through governmental action. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); Jennings v. Shuman, 567 F.2d 1213, 1220 (3d Cir. 1977); McNally v. Pulitzer Publishing Co., 532 F.2d 69, 75 (8th Cir. 1976).
 
 
 15
 Moreover, the damages allegedly sustained by Bishop were to interests within the Due Process Clause's protection of liberty and property. Bishop has asserted a liberty interest by alleging that his supervisor, defendant Tice, directed defendants Ansley and Miles in a scheme that, in the process of coercing Bishop to resign, sullied his reputation by defaming him before third parties. This court has held that
 
 
 16
 a government employer has deprived its employee of a liberty interest * * * (when) the government employer, in connection with the termination of government employment, * * * makes a charge which might seriously damage the employee's standing and reputation in the community.
 
 
 17
 Owen v. City of Independence, Missouri, 560 F.2d 925, 935 (8th Cir. 1977), vacated and remanded on other grounds, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978). Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), relied upon by the district court, is distinguishable for the reason that the actions complained of in Paul did not occur in connection with the termination of employment. See Owen v. City of Independence, Missouri, supra, 560 F.2d at 935-37.
 
 
 18
 Bishop has also asserted a property interest, by alleging he was coerced into resigning under threat of false and unspecified criminal charges. Bishop's "career status" as a federal employee gave him a legitimate entitlement to continued employment absent a showing of good cause for his dismissal.[6] This expectation of continued employment gave him a property interest within the meaning of the Due Process Clause. See Owen v. City of Independence, Missouri, supra, 560 F.2d at 937 (citing the opinions of six of the nine justices in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)).
 
 B. Cause of Action for Damages[7]
 
 19
 The Supreme Court has inferred causes of action for damages from the Fourth, Fifth and Eighth Amendments. Carlson v. Green, --- U.S. ----, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In Bivens, the Court held that a plaintiff may recover damages from a federal officer who has violated the plaintiff's Fourth Amendment rights.[8] Noting that damages were the ordinary remedy for invasion of personal interests in liberty, the Court reasoned that monetary relief was appropriate for a Fourth Amendment violation inasmuch as there were neither any "special factors counseling hesitation" in awarding that relief nor any explicit congressional declaration that persons injured through an invasion of their Fourth Amendment interests may not sue directly under the amendment "but must instead be remitted to another remedy, equally effective in the view of Congress."[9] Id. at 395, 396, 397, 91 S.Ct. at 2004, 2005.
 
 
 20
 In Passman, the Court held that the equal protection component of the Fifth Amendment's due process clause impliedly authorized recovery of damages from a Congressman for sex discrimination in employment. Concluding that the decision of Congress to exempt itself from the coverage of federal sex discrimination laws[10] was not a clear expression of an intent to foreclose alternative remedies for sex discrimination, 442 U.S. at 247, 99 S.Ct. at 2278, the Court discerned "no special factors counseling hesitation." The Court observed there were "available no other alternative forms of judicial relief," 442 U.S. at 245, 99 S.Ct. at 2277, and that a constitutionally based damage remedy might be unnecessary to infer were Congress to create equally effective alternative remedies. 442 U.S. at 248, 99 S.Ct. at 2278.
 
 
 21
 The factor of whether Congress has provided an effective alternative to a proposed constitutionally based damage remedy has figured prominently in the decisions of federal courts applying Bivens. For example, several circuits, declining to interpret the Fourteenth Amendment as impliedly authorizing a compensatory remedy against a municipality for the unconstitutional conduct of its officials, have relied on the fact that Congress has authorized another form of relief.[11] E. g., Cale v. City of Covington, 586 F.2d 311, 317 (4th Cir. 1978) (declining to infer Bivens style remedy in part because of congressionally-provided alternative of 42 U.S.C. § 1983 suit against individual municipal officials); Mahone v. Waddle, 564 F.2d 1018, 1024-25 (3d Cir. 1977) (plaintiffs have cause of action under 42 U.S.C. § 1981 and "Bivens teaches that the existence of an effective and substantial federal statutory remedy * * * obviates the need to imply a constitutional remedy"); Kostka v. Hogg, 560 F.2d 37, 42 (1st Cir. 1977) ("existence of a statutory remedy (42 U.S.C. § 1983) which is designed to implement the constitutional guarantee may itself render the Bivens analysis inappropriate").[12] Similarly, courts have declined to infer Bivens style damage claims based on the torts of federal government employees where the plaintiff had an alternative federal remedy under the Federal Tort Claims Act (FTCA). E.g., Torres v. Taylor, 456 F.Supp. 951, 952-55 (S.D.N.Y. 1978). Contra, Thornwell v. United States, 471 F.Supp. 344, 354-55 (D.D.C. 1979). The Court in Passman observed that five courts of appeals have inferred causes of action for damages under the Fifth Amendment. 442 U.S. at 244 n.22, 99 S.Ct. at 2276 n.22. In all of the cases the Court cited, however, it appears that Congress had provided the plaintiff with no alternative federal remedy.[13] We therefore analyze Bishop's assertion of a constitutionally based right of action for damages in light of what alternative remedies were available.
 
 
 22
 A federal employee in the competitive service is entitled to challenge his dismissal as not justified by sufficient cause. Arnett v. Kennedy, 416 U.S. 134, 140-46, 94 S.Ct. 1633, 1637-40, 40 L.Ed.2d 15 (1974) (citing 5 U.S.C. §§ 7501, 7701; 5 C.F.R. Parts 752, 771, 772). If successful, the dismissed employee is entitled to reinstatement and back pay, with appropriate off-sets. Gratehouse v. United States, 512 F.2d 1104, 1108, 1112 (Ct.Cl.1975). Although these rights are not available to one who has voluntarily relinquished his employment (because the rights are triggered only by an adverse agency action), see, e.g., Cunningham v. United States, 423 F.2d 1379, 1382, 191 Ct.Cl. 471 (1970), the rights are available to one who, like Bishop, has made a nonfrivolous allegation that his resignation was coerced.[14] Gratehouse v. United States, supra, 512 F.2d at 1108.
 
 
 23
 These civil service discharge appeal procedures, then, entitle a wrongfully dismissed employee to reinstatement and back pay to compensate for the invasion of his property interests. If the employee was dismissed in connection with unsupported defamatory charges, the procedures also afford him an opportunity to clear his name in order to avert any invasion of his liberty interests. Arnett v. Kennedy, supra, 416 U.S. at 157, 94 S.Ct. at 1645.
 
 1. Substantive due process
 
 24
 The damages sustained by Bishop allegedly resulted from action tantamount to a wrongful dismissal coupled with defamation. These damages could have been recovered or averted by resort to the civil service remedies created by Congress. It is our view that the existence of these remedies obviates a Bivens style compensatory remedy inferred from the Constitution. See cases cited in text accompanying notes 11-14, supra.
 
 
 25
 A Bivens style remedy for wrongfully dismissed federal employees not only is unnecessary but also would be at odds with the existing discharge appeal procedures to the extent that dismissed employees would be encouraged to bypass these procedures in order to seek direct judicial relief against either the government or individual government officers. Cf. Sampson v. Murray, 415 U.S. 61, 83, 94 S.Ct. 937, 949, 39 L.Ed.2d 166 (1974) (stressing, in denying temporary injunctive relief to discharged federal employee, government's traditional interest in managing its own internal affairs); see also McKart v. United States, 395 U.S. 185, 193-94, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (stressing importance of permitting agency created by Congress to have first crack at developing facts and applying expertise). A widespread evasion of civil service discharge appeal procedures in order to seek direct judicial relief is admittedly unlikely.[15] However, it remains that the existence of a Bivens style damage action would tend to induce some circumvention of the administrative scheme Congress designed to adjudicate the claims of dismissed federal employees. The existence of civil service remedies, coupled with the apparent anomaly of a parallel Bivens style remedy, constitutes a "special factor counseling hesitation" in the creation of a constitutionally based remedy for a wrongful dismissal; we are persuaded it would therefore be unwise to infer a cause of action for damages directly from the Fifth Amendment. See Bush v. Lucas, 598 F.2d 958, 961 (5th Cir. 1979), vacated and remanded in light of Carlson v. Green, 445 U.S. ----, 100 S.Ct. 1846, 64 L.Ed.2d 268 (1980).[16]
 
 2. Procedural due process
 
 26
 The existence of civil service discharge appeal procedures is of little avail to Bishop, however, if, as he has alleged, defendants blocked his resort to them by failing to cooperate with his inquiries and by continuing their threat to lodge criminal charges. See note 4 supra. This court has indicated that a wrongfully discharged federal employee may proceed against a party who is responsible for the employee's failure to exhaust administrative remedies. Kuhn v. National Association of Letter Carriers, Branch 5, supra, 528 F.2d at 771 (had dismissed federal employee's late administrative filings resulted from his union's breach of duty to fairly represent him, action could have been maintained against the offending union and the governmental employer). Thus, if Bishop can prove defendants interfered with his right to procedural due process, he is entitled to the damages that actually resulted, which would include, for example, mental and emotional distress. See Carey v. Piphus, 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978); cf. Petersen v. Rath Packing Co., 461 F.2d 312, 316 (8th Cir. 1972) (union's wrongful refusal to process employee's grievance is liable in damages to extent it is actually responsible for employer's adverse action).[17]
 
 
 27
 Bishop's procedural due process damage claim remains subject, of course, to a defense of qualified immunity based upon good faith and reasonable grounds. See Butz v. Economou, supra, 438 U.S. 478, 506-07, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). But the applicability of this defense is obviously something we cannot decide in the absence of a record; it must be determined at trial or through summary judgment.
 
 III. The Fraud and Deceit Claim
 
 28
 The Arkansas Supreme Court has recognized a cause of action for "the intentional and successful employment of any cunning, deception, or artifice, used to circumvent, cheat, or deceive another," Mazander v. Reed, 233 Ark. 511, 345 S.W.2d 469, 471 (1961) (quoting Arkansas Valley Compress & Warehouse Co. v. Morgan, 217 Ark. 161, 229 S.W.2d 133, 136 (1950)). Relying on this authority, Bishop contends and defendants do not dispute that Arkansas would recognize a cause of action for deceit. We agree.
 
 
 29
 The elements of deceit are (1) defendant's false representation of fact, (2) defendant's knowledge or belief that the representation is false, (3) defendant's intent to induce plaintiff's reliance on the misrepresentation, (4) plaintiff's justifiable reliance, and (5) plaintiff's damage, resulting from the reliance. W. Prosser, Law of Torts § 105, at 685-86 (4th ed. 1971). Although similar to an action for defamation, an action for deceit is distinct and is covered by a different, three-year statute of limitations: Ark.Stat.Ann. § 37-206. Air Leases, Inc. v. Baker, 167 F.Supp. 145, 148 (W.D. Ark. 1958).
 
 
 30
 The district court held Bishop's complaint was insufficient for failure to state element (1) above "that defendants Ansley and Miles actually made any false representation of fact concerning their intention 'to lodge criminal charges' against plaintiff if he did not resign * * *." Bishop v. Tice, supra, slip op. at 3. We disagree with this interpretation of the complaint. Although paragraph 8 of the amended complaint does describe defendants' alleged threat to file false criminal charges without characterizing defendants' representation of intent as false, see pp. 351-352 supra, that characterization appears in other portions of the amended complaint. Paragraph 12 states "the statements so made by Defendants Ansley and Miles were false and defamatory" (emphasis supplied), and paragraph 15 states that "in taking (the actions mentioned in the complaint), * * * Defendants (Tice, Ansley and Miles) conspired together to defraud Plaintiff and to coerce and intimidate Plaintiff by means of false statements" (emphasis supplied). Read as a whole, then, the complaint does allege that defendants misrepresented their intent to lodge criminal charges. Although one might wonder how plaintiff can substantiate this charge of misrepresentation, he has stated the elements of a claim and should have an opportunity to demonstrate their existence.
 
 
 31
 As defendants point out, Bishop's claim of deceit is out of the ordinary inasmuch as Arkansas cases sounding in fraud or deceit have arisen only in the context of financial or commercial disputes. Nevertheless, "(t)here is no essential reason to prevent a deceit action from being maintained, for intentional misstatements at least, where other types of interest are invaded * * *." W. Prosser, supra, § 105 at 684.
 
 IV. The Contractual Interference Claim
 
 32
 To maintain an action for contractual interference under Arkansas law, a plaintiff must show (1) existence of a contract, (2) intentional interference with the contract, and (3) resulting damages. Once this proof is in, the defendant must demonstrate that the interference was justifiable or privileged. Stebbins & Roberts, Inc. v. Halsey, 582 S.W.2d 266, 268 (Ark.1979). Bishop's complaint states a contractual interference claim on the theory that defendants' threat to lodge criminal charges if he did not resign prevented him from continuing to perform his employment contract with the government.
 
 
 33
 The district court, however, dismissed Bishop's contractual interference claim because he had failed to exhaust his civil service remedies, see pp. 352-353 supra. We disagree with this disposition of the claim. Although exhaustion of administrative remedies is often a prerequisite to judicial relief against a governmental employer for breach of an employment contract, see, e.g., Kuhn v. National Association of Letter Carriers, Branch 5, supra, 528 F.2d at 770-71 (dismissing discharged postal employee's claim against Postal Service), Bishop here seeks a separate form of judicial relief against individuals for interference with his performance of that contract. As against individual defendants, there were no administrative remedies to exhaust; the exhaustion cases are simply off point.[18]
 
 
 34
 Defendants argue that the district court's contractual interference holding could be affirmed on the alternative ground that the contractual interference claim was barred by the one-year statute of limitation because it is based on "words spoken whereby special damages are sustained." Ark.Stat.Ann. § 37-201. Although this contention might have merit were the question one of first impression in Arkansas, we note that the Arkansas Supreme Court has declared the limitation period for a contractual interference claim is three years. Bankston v. Davis, 559 S.W.2d 714, 714 (Ark.1978) (citing Ark.Stat.Ann. § 37-206).
 
 V. Official Immunity
 
 35
 Relying on Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), defendants contend we can affirm the district court's dismissal of Bishop's deceit and contractual interference claims on the ground that defendants enjoy absolute immunity from liability predicated upon state tort law. We do not read Barr so broadly.
 
 
 36
 Barr was a 5-4 decision which held that the acting director of an agency who had issued a press release announcing the suspension of two subordinates for misconduct was absolutely immune from liability for malicious defamation. The plurality opinion of four justices held absolute immunity was available if the action complained of "was within the outer perimeter of (the official's) line of duty." 360 U.S. at 575, 79 S.Ct. at 1341. The concurring opinion of Justice Black emphasized the importance of keeping the public informed by encouraging criticism of governmental performance, and noted that "the press release was neither unauthorized nor plainly beyond the scope of (defendant's) official business, but instead related more or less to general matters committed by law to his control and supervision." 360 U.S. at 577-78, 79 S.Ct. at 1343.
 
 
 37
 Barr is of no comfort to defendants here, even assuming that Bishop's dismissal from employment was a matter committed to defendants' control. Taking the allegations in Bishop's complaint as true, defendants did not simply misuse their authority but went clearly beyond it by threatening Bishop with criminal charges instead of attempting to dismiss him for cause. Although federal supervisors would normally enjoy absolute immunity from liability in tort for actions relating to the discharge of their subordinates, see, e.g., Mandel v. Nouse, 509 F.2d 1031, 1033 (6th Cir. 1975), absolute immunity is lost when a supervisor adopts means beyond the outer perimeter of his authority. Given the allegations of the complaint and the absence of a record, we cannot say that any of the defendants are entitled to absolute immunity. The determination of qualified immunity, of course, must also await the proofs.
 
 
 38
 In summary, we conclude that Bishop has stated a right of action under three distinct theories: (1) deprivation of procedural due process; (2) fraud and deceit; (3) contractual interference. None of these claims, we note, would be available in the ordinary case of an employee's dismissal or coerced resignation. This case is special inasmuch as the complaint alleges that the means used to effect the plaintiff's termination from employment were also used to preclude his resort to administrative remedies. No absolute immunity is available on a claim that plaintiff's constitutional rights have been deprived. Nor can we say defendants are entitled to absolute immunity on the state tort claims, for aught that appears the actions alleged were clearly beyond their official authority.
 
 
 39
 We therefore reverse and remand for further proceedings consistent with this opinion.
 
 
 40
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 41
 I concur with Judge Stephenson's opinion holding that Bishop has constitutionally protected property and liberty interests in his employment rights and his good reputation as a civil servant. I further agree that Bishop has a property interest in his right to seek administrative redress for his ouster, but this right is conditioned on seeking administrative redress, if available. I think that it is premature to determine now whether a damage remedy is available for the Fifth Amendment due process violations without first requiring exhaustion of administrative procedures to determine whether administrative remedies are available or not. Therefore, I dissent from that portion of the majority opinion which goes to the merits of the availability of damages directly under the Fifth Amendment. I also dissent from the majority's finding that Bishop has a state claim for fraud and deceit, since I believe that under the complaint's factual allegations the proper cause of action is one for defamation or intentional infliction of emotional distress rather than fraud and deceit. Finally, I concur with the majority's determination that the defendants are not entitled to absolute immunity on the state contractual interference claim.
 
 I.
 
 42
 This case presents three issues with regard to Bishop's due process claims. First, whether Bishop alleges any set of facts that, if proven, would establish that the federal government violated the Due Process Clause of the Fifth Amendment in the matter of his resignation. Second, whether a cause of action can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated. Third, whether damages are an available remedy for this cause of action.
 
 Property and liberty interests
 
 43
 The resolution of the first issue depends upon whether a deprivation of Bishop's "(1) employment rights and his good reputation as a civil servant, and (2) his right to seek administrative redress for his ouster", ante at 353, are "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth Amendment.
 
 
 44
 The plurality opinion of the Supreme Court in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), held that a nonprobationary federal employee has a statutorily created "property" interest in not being removed from his employment. Id. at 151-52, 94 S.Ct. at 1643 (opinion of Rehnquist, J.; Burger, C. J., and Stewart, J., concurring). Justice Rehnquist's opinion also held that a federal employee has a limited "liberty" interest in having his reputation protected against allegations of dishonesty. Id. at 157, 94 S.Ct. at 1645. The former "property" interest, however, does "not create an expectancy of job retention in those employees requiring procedural protection under the Due Process Clause beyond that afforded by the statute (5 U.S.C. § 7501 (1976) (repealed 1978, current version at 5 U.S.C.A. §§ 7512, 7513 (1980))) and related agency regulations." Nor does the latter "liberty" interest require procedures beyond "the post-termination hearings provided by the Civil Service Commission." Id. at 163, 94 S.Ct. at 1649. Justice Powell, however, in his concurrence in part and in result, in which he was joined by Justice Blackmun, found that the Civil Service termination statute, 5 U.S.C. § 7501 (1976), conferred a "property" interest under the Fifth Amendment that was protected by the constitutional, rather than statutory, right to procedural due process. Id. at 166-67, 94 S.Ct. at 1650. Justice Powell concluded that the statutory procedures for a post-termination hearing were adequate to protect a federal employee's "property" interest in continued employment. Id. at 171, 94 S.Ct. at 1652.[1] The remaining members of the Court (totalling six members) agreed with Justice Powell that once the government has defined (in this case in 5 U.S.C. § 7501) a "property" or "liberty" interest, the Constitution defines the required minimal procedural due process to be afforded. See id. at 185, 94 S.Ct. at 1659 (White, J., concurring in part and dissenting in part); id. at 211, 94 S.Ct. at 1672 (Marshall, J., dissenting).
 
 
 45
 From the Arnett decision, I conclude that Bishop, in the first part of his complaint, has alleged facts concerning his employment rights and good reputation that, if proven, would establish that the federal government violated the Due Process Clause of the Fifth Amendment. Five members of the Court held that a federal employee who is subject to removal from his employment is entitled to the statutory procedural protection of 5 U.S.C. § 7501 (1976) (repealed 1978, current version at 5 U.S.C.A. §§ 7512, 7513 (1980)). Six members held that the protection is of constitutional dimension. The fact that Bishop resigned, rather than being terminated by O.S.H.A., does not preclude his assertion of a due process violation. Bishop's complaint alleges that his resignation was involuntary, a fact which if proven requires that he be afforded the requisite statutory procedural protections. See Gratehouse v. United States, 512 F.2d 1104, 1108 (Ct.Cl.1975).
 
 
 46
 The second part of Bishop's complaint, that the federal government through its employees deprived him of "his right to seek administrative redress for his ouster," is more troublesome. The majority's analysis of Bishop's allegation of a deprivation of his right to seek administrative redress for his ouster construes it to "imply an on-going state of duress causing Bishop to forgo his right to seek administrative redress." Ante at 353, n.4. Clearly, Bishop's action of filing suit in the district court precludes any construction of the complaint which would find that Bishop was, at the time of filing, still in fear of instituting administrative action. If Bishop overcame duress to file this suit, he could as readily have filed for administrative relief. Bishop does allege that fear of criminal prosecution did deter him from instituting such action in the past. At this time, however, there is no reason to believe that the defendants are in any sense preventing Bishop from pursuing his administrative remedies. Bishop may still have the right to seek administrative redress for his alleged forced resignation. As Bishop admits in his brief, the government has "given its permission to be sued or set up certain administrative procedures to redress wrongs committed by its employees for which the government has elected to hold itself responsible. The administrative remedies provided career status civil service employees are just such an election. See 5 U.S.C., §§ 7501-7512, 7701." Bishop's right to seek administrative redress may still remain unimpaired as a result of his alleged forced resignation.[2]
 
 
 47
 If in fact Bishop, upon seeking administrative procedural review of his termination, finds such review available, no due process violation could be ascertained out of this set of facts. Under these circumstances, Bishop's resort to procedural due process protections may have been delayed by his own fear of possible criminal prosecution, but at no time was Bishop ever denied his procedural due process rights. The administrative procedures were always available. If Bishop voluntarily waived his appeal rights, he could be bound by his decision. Here Bishop would simply have chosen not to utilize them due to the alleged threat of criminal prosecution. No due process "property" or "liberty" interest would be involved.
 
 
 48
 Bishop's fear of criminal prosecution is strikingly similar to the respondent's fear in Paul v. Davis, 424 U.S. 693, 697, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976), that
 
 
 49
 the "active shoplifter" designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair his future employment opportunities. Accepting that such consequences may flow from the flyer in question, respondent's complaint would appear to state a classical claim for defamation actionable in the courts of virtually every State. Imputing criminal behavior to an individual is generally considered defamatory per se, and actionable without proof of special damages.
 
 
 50
 The Court found no due process violation involved, since the respondent "has pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded" and there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Id. at 700-02, 96 S.Ct. at 1160-1161 (footnote omitted). As long as administrative procedures remain open to Bishop, he has not been denied a right guaranteed by the Fifth Amendment.
 
 
 51
 If, on the contrary, administrative procedures are no longer available to Bishop, his procedural due process right under Arnett to a termination hearing may have been violated. Bishop would probably state a cause of action under the Fifth Amendment if this situation were present and he did not voluntarily waive his administrative procedural rights.
 
 
 52
 The only method to determine whether Bishop has been deprived of a "liberty" or "property" right to "seek administrative redress for his ouster" is to make a prior determination that the administrative procedures are no longer available. To resolve this issue, I would require that Bishop exhaust administrative remedies prior to bringing a direct cause of action under the Fifth Amendment. See post at 363.
 
 Cause of action
 
 53
 The second issue to be addressed is whether a cause of action can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated. The Supreme Court, one day prior to the district court's dismissal of this case, held in Davis v. Passman, 442 U.S. 228, 243, 99 S.Ct. 2264, 2276, 60 L.Ed.2d 846 (1979), that a direct cause of action is proper when Fifth Amendment rights have been violated and when the claimant "has no effective means other than the judiciary to vindicate these rights." (Footnote omitted.)[3] Whether this latter phrase must be read as a requirement that administrative procedures must be exhausted prior to judicial adjudication is open to question. Compare McKart v. United States, 395 U.S. 185, 193-95, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969), with Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 526, 19 L.Ed.2d 647 (1967) (citing McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)). Exhaustion of administrative remedies in Bishop's case appears appropriate in light of the Court's holding in Arnett that the statutory procedural safeguards are sufficient to protect a federal employee's constitutional due process rights. To allow the claimant to immediately invoke the jurisdiction of the federal courts would divest the agency of the "exercise of discretionary powers granted the agency by Congress * * *." McKart, supra, 395 U.S. at 194, 89 S.Ct. at 1663.
 
 
 54
 The Supreme Court, in reversing a district court's temporary injunction against a federal probationary employee's dismissal pending an administrative appeal to the Civil Service Commission, noted that while federal courts do have authority to review the claim of a discharged governmental employee where the agency effectuating the discharge did not follow administrative regulations, see Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), the review occasioned by "judicial proceedings (was) not commenced until the administrative remedy had been unsuccessfully pursued." Sampson v. Murray, 415 U.S. 61, 71-72 & n.22, 94 S.Ct. 937, 944 & n.22, 39 L.Ed.2d 166 (1974). One commentator has construed the Sampson opinion to be within the realm of the exhaustion doctrine. K. Davis, Administrative Law of the Seventies § 20.01 at 449 (1976). Exhaustion of administrative remedies comports with Sampson 's caution against judicial interference in disputes concerning government employment except when absolutely necessary.
 
 
 55
 Until administrative action has become final, no court is in a position to say that such action did or did not conform to applicable regulations. Here respondent had obtained no administrative determination of her appeal at the time she brought the action in the District Court. She was in effect asking that court to grant her, on an interim basis, relief which the administrative agency charged with review of her employer's action could grant her only after it had made a determination on the merits.
 
 
 56
 Sampson v. Murray, 415 U.S. at 74, 94 S.Ct. at 945.
 
 
 57
 The Supreme Court opinions in Passman, Arnett, Sampson, and McKart suggest that exhaustion should be a prerequisite to Bishop's maintaining his due process claims in federal court. Accordingly, Bishop should be required to exhaust his administrative remedies prior to presenting his cause of action in the federal courts. Cf. Brice v. Day, 604 F.2d 664, 666-67 (10th Cir. 1979) (requiring exhaustion of prison administrative procedures prior to bringing direct action under the Eighth Amendment).
 
 Damage remedy
 
 58
 The third issue, whether damages are an appropriate remedy,[4] also leads me to conclude that administrative review is proper prior to the determination of whether the case should be dismissed under Rule 12(b)(6). If administrative review is available, the procedure allows for the award of back pay in the event that an unjustified termination has taken place. When Congress "create(s) equally effective alternative remedies, the need for damages relief might be obviated." Davis v. Passman, 442 U.S. at 248, 99 S.Ct. at 2278. The need for the federal courts to award damages, if the administrative review procedure found an award of back pay to be appropriate, would be greatly diminished if not eliminated. Under these circumstances, judicial relief in the form of damages would probably be unavailable. Even if the administrative procedure found the resignation proper, the federal courts could review the decision of the agency under 5 U.S.C.A. § 7703 (1980). Under these circumstances, the complaint of Bishop would probably have to be dismissed for failure to state a claim upon which relief can be granted. See Bush v. Lucas, 598 F.2d 958, 961 (5th Cir. 1979), vacated, 445 U.S. ----, 100 S.Ct. 1846, 64 L.Ed.2d 268 (1980) (remanded in light of Carlson ); cf. Carlson v. Green, --- U.S. ----, ----, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) (limiting judicial discretion to deny Eighth Amendment civil damage remedy).
 
 
 59
 If, however, Bishop's administrative review is precluded by his failure to appeal his alleged involuntary resignation within the appropriate period,[5] a cause of action for which relief could be granted would probably be present. Under these circumstances, Bishop would have been denied his due process right to administrative review, including any possibility of an award of back pay by the administrative board. An award of damages under the Fifth Amendment would then appear to be appropriate.
 
 II.
 
 60
 I also dissent from that portion of the majority opinion which finds that Bishop stated a cause of action for fraud and deceit with regard to his state claim alleging that the defendants misrepresented their intent to lodge criminal charges. A threat to file criminal charges cannot constitute fraud and deceit. A threat of any type of action, be it benign or malicious, carries with it implicitly the possibility of its being carried out or not, depending upon its credibility. If a threat is sufficiently credible to induce compliance, the threat cannot be a misrepresentation.
 
 
 61
 The common law of tort has provided two causes of action for threatening conduct. First, an action for assault, the most obvious example being, "If you don't give me your money I will kill you." See W. Prosser, Law of Torts § 10 at 40 (4th ed. 1971). Second, an action for intentional infliction of mental distress; Dean Prosser gives as an example "the hotel detective who bursts into a room crying that the occupants are unmarried and threatening jail * * *." Id. at § 12, at 53. Dean Prosser also cites as examples the following: (1) a detective's threat to charge a woman with espionage unless she surrendered certain private letters; (2) threatening a school girl with disgrace or imprisonment unless she signed a confession of immoral conduct; and (3) creditor threats concerning arrest, ruination of credit, or unfounded suit unless payment is made. Id. at 56-57.
 
 
 62
 In these two intentional causes of action, the common law of tort has provided a legal remedy against threats that have sufficient credibility to cause probable harm to others. The common law tort cause of action for fraud and deceit does not relate to threats of future conduct. As pointed out by the majority opinion, deceit involves "false representations of fact" with the expectation of a person's reliance upon it. A threat of possible future conduct, whether it be the filing of criminal charges or the taking of a person's life, simply does not involve any factual misrepresentation until after the demand is refused and then the threat is not carried out. Even in the latter situation, however, a cause of action for fraud and deceit would be inappropriate since no damages result from a failure to carry out the threat.
 
 
 63
 It is important to remember that Bishop was not left without a legal remedy for the wrong done by the alleged threats. In addition to a possible cause of action for intentional infliction of emotional distress, he may also have had a cause of action for defamation. Bishop, however, waited too long to file suit, resulting in these actions being barred by the statute of limitations. Ark.Stat.Ann. § 37-201 (Supp.1979). Bishop also has a claim for damages from interference with his employment contract, although the special damages claimed to result from emotional distress should be precluded in this claim. See id.
 
 III.
 
 64
 In Bishop's complaint, jurisdiction was alleged under 28 U.S.C. § 1331 and 28 U.S.C. § 1346. The district court, however, independently invoked jurisdiction on the basis of diversity of citizenship. 28 U.S.C. § 1332. While section 1346 is clearly inapplicable to Bishop's claims, federal question jurisdiction under section 1331 was sufficient for the district court to decide the controversy of whether Bishop stated a federal cause of action on the due process claims. See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Once it was found that Bishop stated no federal cause of action, the pendent state claims should then have been dismissed unless an independent jurisdictional basis could be found. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[6]
 
 
 65
 The district court was able to rule on the merits of the state claims since it found an independent jurisdictional basis under diversity of citizenship. The majority opinion has found, in addition to Bishop's federal claims, a cause of action under state law for both deceit and contractual interference. I find a cause of action only for the latter, thus limiting the amount of damages recoverable by Bishop. I would therefore remand to the district court with directions to dismiss the Fifth Amendment claim, without prejudice to refile after exhaustion of Bishop's administrative remedies, and to reinstate Bishop's state claim of contractual interference, provided Bishop's claim for contractual interference damages, excluding any special damages, involves an amount in controversy of over $10,000.
 
 
 
 [1]
 The Honorable Garnett T. Eisele, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 The alleged incident occurred in February 1976; the complaint was filed in November 1977
 
 
 [3]
 The court also dismissed Bishop's claim under 42 U.S.C. § 1985(3) (providing damage action for conspiracy to deprive individual rights) because the complaint did not allege a "class-based, invidiously discriminatory animus behind the conspirators' action." Bishop v. Tice, No. LR-C-77-310, slip op. at 3 (E.D.Ark. 1979) (quoting Griffin v. Breckinridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). This conclusion was sound and Bishop does not challenge it on appeal
 
 
 [4]
 Although the complaint does not specifically allege that defendants obstructed Bishop's access to administrative remedies, that allegation emphasized in Bishop's briefs before this court follows from the express allegations that (1) defendants removed Bishop so that defendant Tice could fill Bishop's position with a person of his own choice; (2) Bishop was coerced into resigning without an explanation of the charges against him and with only one hour of notice; (3) defendant Tice failed, despite Bishop's repeated requests, to supply Bishop with a statement of the reasons for Bishop's coerced resignation; and (4) defendants' actions "deprived (Bishop of) his right to due process * * * ." Taken together, these allegations not only aver that Bishop was deprived of certain statutory procedural rights (see 5 U.S.C. § 7501(b); 5 C.F.R. Part 752), but also fairly imply an on-going state of duress causing Bishop to forgo his right to seek administrative redress. See generally Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (on motion to dismiss, construe complaint favorably to pleader); Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (complaint need only give defendant fair notice of what plaintiff's claim is and the grounds on which it rests)
 
 
 [5]
 Cf. Warren v. Government Nat'l Mortgage Ass'n, 611 F.2d 1229, 1234 (8th Cir. 1980) (fact that an agency seeking mortgage foreclosure is owned and authorized by the federal government does not in itself make that agency's action governmental action for purposes of the Fifth Amendment's Due Process Clause)
 
 
 [6]
 Reading the complaint liberally, we construe Bishop's allegation that he had "career status" to mean that he was "(a)n individual in the competitive service (and therefore could) be removed or suspended without pay only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7501(a) (1970). Amendments made effective in 1979 are to the same effect. See 5 U.S.C. §§ 7511(a)(1); 7513(a)
 
 
 [7]
 We pretermit a separate discussion of whether Bishop has a "cause of action" in the sense that he belongs to that class of litigants entitled to invoke judicial relief, see Davis v. Passman, 442 U.S. 228, 236-44, 99 S.Ct. 2264, 2272-76, 60 L.Ed.2d 846 (1979). There is no dispute that Bishop is a proper party plaintiff
 
 
 [8]
 After holding that the Fourth Amendment impliedly authorized a damage action, the Court remanded to the court of appeals to consider the separate question of whether the defendants were immune from liability by virtue of their official position. 403 U.S. at 397-98, 91 S.Ct. at 2005
 
 
 [9]
 The plaintiff in Bivens sued federal narcotic agents for unwarranted entry into plaintiff's home. The present version of the Federal Tort Claims Act generally provides a remedy for intentional torts committed by law enforcement officials, see 28 U.S.C. § 2680(h) (1974 amendment to 28 U.S.C. § 2680(h)), but the version in force at the time the Bivens case arose did not. A 42 U.S.C. § 1983 action was also unavailable since section 1983 applies only to state action. The plaintiff did have a state law tort remedy, but the court in Bivens considered it inadequate to vindicate plaintiff's federal rights, see 403 U.S. at 394-95, 91 S.Ct. at 2003-04
 
 
 [10]
 Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which forbids sex discrimination in employment and provides for the remedy of back pay, id. at § 2000e-5(g), does not apply to Congress, see Davis v. Passman, supra, 442 U.S. at 247, 99 S.Ct. 2278
 
 
 [11]
 A plaintiff seeking damages from local government officials will likely want to sue the governmental body as well, to ensure a financially responsible defendant, to enhance jury sympathy, and for other reasons. Note, Damage Remedies Against Municipalities for Constitutional Violations, 89 Harv.L.Rev. 922, 926-27 (1976). Yet a local governmental body is directly liable under 42 U.S.C. § 1983 only for unconstitutional action "officially adopted and promulgated by that body's officers." Monell v. Department of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Consequently, in cases where the local government is not subject to suit under section 1983, plaintiffs have argued that a direct cause of action for damages is authorized by the Constitution itself
 
 
 [12]
 In Owen v. City of Independence, Missouri, 560 F.2d 925, 931-34 (8th Cir. 1977), vacated and remanded, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978), where a discharged city employee alleged he had been injured by unconstitutional action which amounted to official policy, we surveyed conflicting case law relating to the effectiveness of a 42 U.S.C. § 1983 damage suit against individual municipal employees. We then held that the employee had an implied cause of action under the Fourteenth Amendment against the city for equitable relief, including back pay. Doubt concerning the adequacy of an alternative federal remedy in Owen was removed, however, by Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court reinterpreted section 1983 to permit direct suit against municipalities for officially approved unconstitutional conduct, see note 11 supra. Reconsidering Owen in light of Monell, we reasoned:
 A post-Monell interpretation of section 1983 permits Owen to sue the City of Independence directly and, therefore, we find it unnecessary to rely on the Bivens doctrine as we did in our previous opinion. By enacting section 1983, Congress has provided an appropriate and exclusive remedy for constitutional violations committed by municipalities. Consequently, no reason exists to imply a direct cause of action under the fourteenth amendment.
 Owen v. City of Independence, Missouri, 589 F.2d 335, 337 (8th Cir. 1978), rev'd on other grounds, --- U.S. ----, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Accord Turpin v. Mailet, 591 F.2d 426, 427 (2d Cir. 1979) (en banc).
 Thus, while this circuit may differ with others concerning whether a section 1983 damage action against individual municipal officials is an adequate alternative to an action directly against the municipality, we adhere to the widely held view that a Bivens analysis is obviated once an adequate federal remedy is shown to exist.
 
 
 [13]
 Several of these cases involved claims of intentional torts by federal law enforcement officials that arose before March 16, 1974, when these torts became actionable under the Federal Tort Claims Act, see note 9 supra
 
 
 [14]
 Of course, further proceedings might reveal that the allegation of a coerced resignation is frivolous. For present purposes, however, we are bound to take it as true
 
 
 [15]
 A dismissed employee might be reluctant to rely solely on a constitutionally based judicial remedy because (1) he would have to show his dismissal was unjustified, whereas his governmental employer in a civil service proceeding would have the burden of showing that the dismissal was for cause; and (2) he might be unable to secure reinstatement if he sought to avoid an exhaustion-of-administrative-remedies requirement by suing his supervisors as individuals only
 
 
 [16]
 We have examined Carlson v. Green, --- U.S. ----, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and find it consistent with our result
 
 
 [17]
 The Supreme Court seems to have rejected the view that a public employee dismissed without benefit of procedural due process is necessarily prejudiced and therefore entitled to damages in the nature of back pay. Carey v. Piphus, 435 U.S. 247, 260 n.15, 98 S.Ct. 1042, 1050 n.15, 55 L.Ed.2d 252 (1978). The district court can award damages in the nature of back pay, then, only if persuaded that Bishop would have prevailed had he received any hearing to which he was entitled
 
 
 [18]
 The district court's rationale may be akin to an argument that the creation of civil service remedies somehow preempted any state law claim in relation to termination of federal public employment. Defendants make no such argument here, however, and we do not explore it
 
 
 [1]
 Justice Powell also found the federal employee's "liberty" interest in his reputation to be adequately protected by statute
 
 
 [2]
 5 C.F.R. § 1201.22(b) (1979) provides that appeals to the Merit Systems Protection Board for review of agency terminations must be made within twenty days of the effective date of the action. This provision, however, may be waived "in an individual case for good cause shown * * *." 5 C.F.R. § 1201.12 (1979). The allegations set forth in Bishop's complaint concerning continual coercion up until at least the time of filing suit in the district court appear to satisfy the good cause requirement. Furthermore, good cause may also be found for the delay occasioned by filing suit, since Bishop, at that time, was not aware that exhaustion of administrative remedies would be a prerequisite to maintaining a direct cause of action under the Fifth Amendment
 
 
 [3]
 In addition the government official's conduct must not be merely private action. Davis v. Passman, 442 U.S. 228, 236 n.12, 99 S.Ct. 2264, 2272 n.12, 60 L.Ed.2d 846 (1979). While Bishop's reply brief states his complaint "is not an action against the government but instead is a private suit against individuals," the official actions alleged are sufficient to come within the restraints of the Fifth Amendment
 
 
 [4]
 This issue, as well as the exhaustion issue, would not exist if a state official were involved and the remedy of damages were being sought under 42 U.S.C. § 1983
 
 
 [5]
 See note 2 supra
 
 
 [6]
 The Court therein stated that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right * * *. Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted); see P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's the Federal Courts and the Federal System 925 (2d ed. 1973); cf. Kansas City Southern Ry. v. Akin, 138 Ark. 10, 23-27, 210 S.W. 350, 352-53 (1919) (federal action tolls state statute of limitations)