United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3107

_____

| | | |
|---|---|---|
| Robert W. King; Linda Bandel King, | * | |
| individually and on behalf of Nathaniel | * | |
| King and Jacob King; and Wesley J. | * | |
| King and Paul W. King, individually, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Olmsted County; Olmsted County | * | |
| Social Services Department; Mark Barta, | * | |
| individually and in his official capacity | * | |
| as a case worker for the Defendant | * | |
| County; Joan Kindem, individually and | * | |
| in her capacity as a case manager for | * | |
| the Defendant County, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  March 14, 1997

Filed: June 26, 1997

_____

Before WOLLMAN and BEAM, Circuit Judges, and REASONER,[1] District Judge.

_____

_____

[1]The HONORABLE STEPHEN M. REASONER, Chief Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

WOLLMAN, Circuit Judge.

Robert W. King and his wife, Linda Bandel King, individually and on behalf of their sons Nathaniel and Jacob King, together with their sons Wesley and Paul, appeal from the district court's[2] grant of summary judgment in favor of Olmsted County, the Olmsted County Social Services Department (Social Services), and Mark Barta and Joan Kindem, individually and in their capacities as Olmsted County social workers (collectively, the defendants). We affirm.

## I.

Between October of 1992 and March of 1993, Mrs. King contacted Social Services several times to request help with her son Paul. Paul was then sixteen years old and had been diagnosed with Attention Deficit Hyperactive Disorder (ADHD). Paul was skipping school, leaving home for hours, refusing to take medication for his ADHD, physically harming himself, and making suicidal statements.

Mr. Barta met with Paul once in November of 1992, but no significant action was taken until March 22, 1993, when Mr. and Mrs. King met with Barta and again requested assistance with Paul. At that meeting, Mr. and Mrs. King agreed with Barta that Paul would be admitted to the Von Wald shelter in Rochester, Minnesota, a short-term residential facility for troubled adolescents. Mr. and Mrs. King signed a voluntary placement form and releases authorizing Social Services to obtain Paul's medical, psychiatric, and educational records.

Mr. and Mrs. King and Barta subsequently disagreed regarding the proper course of treatment for Paul upon his leaving the Von Wald shelter. Mr. and Mrs. King

---

[2]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

wanted Paul to receive evaluation and treatment in a hospital setting, whereas Barta thought foster placement would be more appropriate.

On April 5, Barta filed a Child in Need of Protection or Services (CHIPS) petition in state court, pursuant to Minn. Stat. § 260.015, seeking temporary custody of Paul to facilitate his placement in foster care. That same day, a state district court judge ruled that there was probable cause to support the CHIPS petition. A CHIPS hearing was held on April 7, and Mr. and Mrs. King, who were represented by counsel, agreed with Social Services that Paul would be placed in a foster home, with Mr. and Mrs. King retaining legal custody.[3] The matter was continued for 30 days. Paul, who had been staying at the Von Wald shelter, was placed in a foster home on April 13. Ms. Kindem assumed primary responsibility for Paul's case on April 14. A follow-up hearing was held on May 10, and the court continued the April 7 order that Paul remain in foster care, with his parents retaining legal custody. On May 14, Paul King entered the Wilson Center in Faribault, Minnesota, on his own volition for medical and psychiatric treatment.

Following a May 21 hearing, the court ordered that Paul would remain at the Wilson Center or any other place agreed upon by the parties. Paul was discharged from the Wilson Center and returned home on June 18. The county attorney's motion to dismiss the CHIPS petition was granted on July 27.

The Kings then filed suit under 42 U.S.C. § 1983, alleging that Social Services had violated their constitutional right to familial relations. They also asserted various state claims. As a basis for their suit, the Kings alleged that sometime in April of 1993, Barta threatened that unless Mr. and Mrs. King relinquished custody of Paul, Social

---

[3]Ms. Kindem erroneously states in her affidavit that "[d]uring the time Paul King was in foster care and the Wilson Center, Olmsted County had legal custody of Paul King pursuant to court order."

Services would take custody of Nathaniel and Jacob. Wesley King stated in an affidavit that Barta called the King home during the time Paul was at the Von Wald shelter and made a similar threat. The Kings also allege that Barta attempted to influence Paul while he was at the Von Wald Shelter with promises of an apartment, a car, clothes, and a new school. The Kings allege that in early May, Barta again threatened Wesley that Social Services would remove Nathaniel and Jacob if Mr. and Mrs. King did not cooperate with Social Services and relinquish legal custody of Paul. They also allege that Kindem made a similar threat when she met with Mrs. King and Wesley at a restaurant on or about May 7. Wesley King stated in an affidavit that around 4:30 p.m. on March 14, Kindem called the King home, demanded to know where Paul was, and threatened to take Nathaniel and Jacob unless Mr. and Mrs. King cooperated with Social Services, presumably by relinquishing legal custody of Paul.

The district court granted summary judgment for the defendants on the section 1983 claim and declined to exercise supplemental jurisdiction over the state claims.

## II.

We have recognized a right to familial relations, which includes the liberty interest of parents in the custody, care, and management of their children. See Thomason v. SCAN Volunteer Servs., Inc., 85 F.3d 1365, 1370-71 (8th Cir. 1996) (quoting Manzano v. South Dakota Dep't of Soc. Servs., 60 F.3d 505, 509-11 (8th Cir. 1995)). The Kings do not claim (indeed, could not claim) that Social Services wrongly became involved in their lives, for Social Services intervened only at Mr. and Mrs. Kings' behest. Nor do the Kings claim they were actually deprived of familial relations, for Nathaniel and Jacob were never taken from Mr. and Mrs. Kings' custody or care. The Kings claim instead that Social Services unconstitutionally interfered with their right to familial relations by coercing and manipulating them with threats that Social Services would take Nathaniel and Jacob unless the Kings "cooperat[ed] with

what the government wanted to do to Paul," and by promising Paul an apartment, a car, clothes, and a new school.

"Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992). "The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) (police's threats to children that they would not see their step-father again did not constitute violation of children's right to familial relations); see Emmons v. McLaughlin, 874 F.2d 351, 353-54 (6th Cir. 1989); Lamar v. Steele, 698 F.2d 1286, 1286 (5th Cir. 1983) (per curiam). We have held that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience, see Hopson, 961 F.2d at 1378-79, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right. See Bishop v. Tice, 622 F.2d 349, 354 (8th Cir. 1980).

We conclude that the alleged threats made by Barta and Kindem, although seemingly inappropriate, do not rise to the level of a constitutional violation. Barta and Kindem did not exhibit any conduct suggesting that they intended to take action on the alleged threats. In addition, the Kings, who were represented by counsel, had ample opportunity to challenge the alleged threats; they could have consulted with counsel regarding the possibility that the children would be taken, and they could have informed any of the three judges reviewing their case of the statements. Even when viewed in the light most favorable to the Kings, the alleged threats can at worst be characterized as "verbal harassment or idle threats" that are "not sufficient to constitute an invasion of an identified liberty interest." Pittsley, 927 F.2d at 7.

Furthermore, the Kings have failed to show that they were coerced by Social Services' statements. No threats were made prior to the March 22 hearing, at which

Mr. and Mrs. King signed a voluntary placement form agreeing to place Paul in the Von Wald shelter. Although two of the alleged statements may have occurred before April 7 (the only time subsequent to March 22 when Mr. and Mrs. King made a decision regarding Paul's treatment), Mr. and Mrs. King gave no indication at the April 7 hearing that their cooperation was being coerced. Rather, the Kings' attorney stated at the May 10 hearing that Mr. and Mrs. King had on April 7 "voluntarily agreed to place [Paul] at a foster home."

Moreover, Mr. and Mrs. King retained legal custody of Paul at all times. Social Services' only intrusive action was placing Paul in foster care, an action which the state court found, and the Kings do not contest, was supported by probable cause. Because there is no showing that Mr. and Mrs. King were effectively deprived of their free choice, they have failed to show that they were unconstitutionally coerced. See Angarita v. St. Louis County, 981 F.2d 1537, 1544-45 (8th Cir. 1992) (county employees' resignations were accomplished by unconstitutional coercion where totality of circumstances revealed that employer's conduct deprived employees of free choice); Cooper v. Dupnik, 963 F.2d 1220, 1248 (9th Cir. 1992) (en banc) (plaintiff states claim of unconstitutional coercion where police conduct deprives plaintiff of his "free and unconstrained will").[4]

Similarly, Mr. and Mrs. King have failed to show how Barta's promises to Paul were unconstitutionally coercive. They neither allege that these promises were communicated to them, nor do they explain how these comments could have been an

---

[4]The Kings rely heavily on Cooper. In Cooper, the defendants argued that because a coerced statement was not used in court, the defendants' coercive behavior did not constitute an actionable due process violation. The Ninth Circuit, en banc, disagreed, holding that "[a] due process violation caused by coercive behavior . . . is complete with the coercive behavior itself." Id. at 1244-45. Whatever our view of the holding in Cooper, the defendants' behavior toward the Kings does not approach the overwhelming coercion described in that case.

attempt to manipulate or coerce them into cooperating with Social Services.  In sum, while Barta's and Kindem's alleged conduct, if it in fact occurred, may have been unprofessional, the Kings have failed to demonstrate that that conduct constituted a constitutional violation.  Compare Bishop, 622 F.2d at 354.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.