Anna Lee PLOURDE

v.

Michael L. FERGUSON; John Hoffman; and Charles Trimmer.

Anna Lee PLOURDE

v.

Daniel GRAHAM.

Civ. A. Nos. N–79–1941, N–80–0013.

United States District Court, D. Maryland.

Aug. 15, 1980.

---

Michael E. Marr and Joseph L. Evans, Baltimore, Md., for plaintiff.

Russell T. Baker, Jr., U. S. Atty., D. Maryland and James A. Rothschild, Asst. U. S. Atty., Baltimore, Md., for defendants.

## MEMORANDUM

NORTHROP, Chief Judge.

These consolidated cases are presently before the Court on the motions (1) of plaintiff to remand to the Circuit Court of Prince George's County, (2) of defendants for dismissal, and, (3) of defendants for

summary judgment. Oral argument was presented on August 6, 1980, and the Court rendered its oral rulings, the rationale for which is herein set forth.

On August 30, 1979, plaintiff filed suit in the Circuit Court for Prince George's County against defendants Michael Ferguson, John Hoffman, Charles Trimmer, and Daniel Graham, all employees of the United States. Her complaint alleged that she was shopping at the Andrews Air Force Base Exchange on September 1, 1978, and purchased a soccer ball tagged at $9.50. After exiting the store, she was immediately accosted by Exchange Detective Ferguson, who accused her of stealing the ball and stated that she was under arrest. Although not set forth in the complaint, the record before this Court indicates that Detective Ferguson accused plaintiff of switching price tags on the ball, placing a $9.50 tag in place of the proper $18.00 tag. Plaintiff was then allegedly taken against her will to the office of defendant Daniel Graham, the store manager. After further detention in that office, two military policemen, defendants John Hoffman and Charles Trimmer, were called and they took plaintiff to the Security Police Station, where she was detained for approximately one hour and then released. Plaintiff was later charged with larceny, in violation of 18 U.S.C. § 641, but was acquitted by a jury. Plaintiff's complaint seeks $50,000 in compensatory damages, and $150,000 in punitive damages, for false imprisonment, assault, battery, slander, and malicious prosecution. Plaintiff contends that the defendants acted in concert and with malice.

On October 18, 1979, the United States Attorney for this District filed a petition based on 28 U.S.C. § 2679(d) to remove the case as to defendant Ferguson to this Court (Civil No. N–79–1941).[1] On December 6, 1979, a motion for remand was filed on plaintiff's behalf. On January 7, 1980, defendant Ferguson filed an opposition to that motion, in which he eschewed reliance on § 2679(d) and claimed instead that 28 U.S.C. § 1442(a)(1) authorized the removal of the case against him. On January 4, 1980, a petition for removal, also based on § 1442(a)(1), was filed on behalf of defendant Graham (Civil No. N–80–0013). Pursuant to Order of Court dated March 12, 1980, the two cases were consolidated for all purposes and trial.

■ Plaintiff contends that the cases against both Ferguson and Graham must be remanded to state court because neither defendant complied with the requirements of 28 U.S.C. § 1446(b). In pertinent part, that section provides:

> The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

Plaintiff contends that Ferguson failed to satisfy these requirements because, even though he filed a removal petition within thirty days of his receipt of the original pleading on October 18, 1979, he did not cite a proper basis for removal until January 7, 1980, more than thirty days after he received the initial pleading. For purposes of this motion, the Court will assume that plaintiff's contention is correct. The motion to remand the case against Ferguson must still be denied, however, since defendant Graham, as hereinafter noted, did file a timely removal petition under § 1442(a)(1), based upon his status as a person acting under a federal officer. Where a single defendant timely removes a case under § 1442, the *entire* case is thereby removed, regardless of whether the other defendants, federal officials or not, properly join in the removal petition, or have themselves already filed untimely petitions. *Howes v. Childers*, 426 F.Supp. 358 (E.D.Ky.1977).

---

1. This petition also sought to remove the case against defendants Hoffman and Trimmer. The propriety of this removal is not before this Court, in light of plaintiff's consent to the dismissal of the cases against defendants Hoffman and Trimmer with prejudice, based on plaintiff's failure to comply with the administrative claim requirements of the Federal Tort Claims Act, 28 U.S.C. § 2675(a).

■ Defendant Graham's petition was timely filed. He received the original pleading in the state court action on December 10, 1979 when he was served, and he filed his removal petition on January 4, 1980. Plaintiff argues that the thirty-day period began to run on October 18, 1979, when Graham's counsel, the United States Attorney, received the original pleading, on the grounds that such constitutes receipt "by otherwise" within the meaning of § 1446(b). This very argument, however, has already been rejected by this Court. *Potter v. McCauley*, 186 F.Supp. 146 (D.Md. 1960).

■ Defendant Graham is also entitled to remove under 28 U.S.C. § 1442(a)(1), which provides in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place where it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . . .

Mr. Graham's removal petition, signed by the United States Attorney, states that [a]t all times relevant to this complaint, the defendant, Daniel Graham, was an employee of the Army and Air Force Exchange Service in the capacity as main store retail manager, operating under the authority of the Secretary of the Army. At all times relevant to this complaint, the defendant-petitioner acted . . . within the scope of his employment and under the color of the office of the Department of Defense.

*Petition for Removal*, p. 1, (Civil No. N–80–0013). Further, this Court has reviewed the affidavits submitted, as well as the trial transcripts of the testimony at plaintiff's criminal trial, and these documents show that Graham's relationship with plaintiff derives solely from his official duties as store manager and as a federal employee. These uncontradicted facts are more than sufficient to support Graham's petition for removal under § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S.Ct. 1813, 1817, 23 L.Ed.2d 396 (1969); *Commonwealth of Pennsylvania v. Newcomer*, 618 F.2d 246 (3d Cir. 1980); *Jarvis v. Roberts*, 489 F.Supp. 924 (W.D.Tex.1980). Accordingly, this Court finds that defendant Graham filed a timely and proper removal petition, thereby removing to this Court the case against himself and defendant Ferguson. Plaintiff's motion for remand must be denied.

■ Defendants Ferguson and Graham have moved for summary judgment on the grounds that they are shielded from suit by absolute governmental immunity. It has long been recognized that federal officers and employees, including employees of nonappropriated fund instrumentalities, are entitled to absolute immunity from state common law torts if the conduct for which they are being sued is within the outer perimeter of the employee's official duties or scope of authority, *Bramblett v. DeSobry*, 490 F.2d 405 (6th Cir. 1974); *Knuemann v. Naranjo*, 378 F.Supp. 104 (D.Md. 1974); *Jarvis v. Roberts, supra; see Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and if extension of absolute immunity to the official or employee is necessary in order that official duties may be performed without fear of the threat of suits which would inhibit the fearless, vigorous, and effective administration of the policies of the government. *Grossman v. McKay*, 384 F.Supp. 99, 110 (D.Md. 1974). This immunity is not defeated by an allegation of malice. Although the doctrine of absolute immunity was initially developed in the context of actions for libel, it appears that the doctrine extends to any common law cause of action. *See Granger v. Marek*, 583 F.2d 781 (6th Cir. 1978) (tortious interference with business, intentional infliction of mental and physical distress); *Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973) (false arrest, malicious prosecution, interference with trade).

■ Defendants Ferguson and Graham have submitted to this Court their job de-

scriptions, an affidavit from Ms. Dorothy Witt, the Exchange manager, and the transcripts of their testimony at plaintiff's criminal trial. These uncontradicted materials establish that both Ferguson and Graham are federal employees who acted within the outer perimeter of their duties in taking all the actions complained of by plaintiff. These materials have not been contradicted in any manner by the plaintiff. Thus, the only remaining question is whether the extension of absolute immunity to these defendants is necessary to promote the fearless, vigorous, and effective administration of the policies of the government. The Court concludes that this question must be answered in the affirmative. Both Ferguson, as an Exchange detective, and Graham, as store manager, are actively involved in the unceasing war against larceny and theft of government property waged daily at a Base Exchange. Their assigned duties, by definition, require them to detain, arrest, and process suspected shoplifters. The scope and range of their assignments render them particularly vulnerable to suit by the shoppers apprehended. These duties often require that difficult judgments be made in a highly emotional setting. The performance of these duties would be severely hampered if, each time store detectives or managers were required to take action against suspected shoplifters, they were forced to balance their duty to act against the potentially ruinous consequences which might befall them in the event of an error of judgment. Consequently, the Court believes that the extension of absolute governmental immunity is appropriate. *Cf. Granger, supra; Galella, supra.*

Of course, such immunity may sometimes deprive a wronged plaintiff of a deserved recovery. This, however, is the price which must be paid if the government is to function effectively for us all. As Judge Learned Hand stated:

> It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied,* 399 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

Plaintiff does not quarrel with the need for governmental immunity, or with its application to the facts of this case. Rather, plaintiff contends that, as a matter of law, federal employees enjoy only a qualified immunity to suit, citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *Scheuer,* however, dealt only with the immunity of state officials when *constitutional violations* are alleged. While the Supreme Court has extended *Scheuer* to federal officials charged with constitutional violations, *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), *Butz* did not overrule, and appears to have as-

sumed, the continued vitality of the absolute immunity doctrine in the context of state common law torts. *Id.* 98 S.Ct. at 2905, 2905 n.22. The courts that have addressed the question since *Butz* have held that absolute immunity is still the rule where state common law torts are alleged. *Miller v. DeLaune,* 602 F.2d 198 (9th Cir. 1979); *Granger v. Marek,* 583 F.2d 781 (6th Cir. 1978); *Litvak Meat Co. v. Padilla,* 470 F.Supp. 1040 (D.Colo.1979). Since plaintiff has alleged common law torts against Graham and Ferguson, they enjoy absolute immunity.

To summarize the Court's oral rulings on the pending motions: plaintiff's motion for remand is denied; the action as against defendants Trimmer and Hoffman is dismissed with prejudice; and, defendants Graham and Ferguson are entitled to summary judgment on the grounds of absolute governmental immunity. A separate Order will be entered to confirm these rulings.