**Iris N. McKINNEY, Appellant,**

v.

**Charles A. WHITFIELD.**

No. 83–2092.

United States Court of Appeals, District of Columbia Circuit.

Argued May 15, 1984.

Decided June 15, 1984.

Charles G. Aschmann, Jr., Alexandria, Va., for appellant.

Scott T. Kragie, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WRIGHT, EDWARDS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case presents a novel question concerning the immunity of federal managerial employees from common law tort liability. Plaintiff-appellant Iris N. McKinney, a GS–13 Budget Analyst in the Federal Aviation Administration ("FAA"), commenced a civil action against defendant-appellee Charles A. Whitfield, her second-line job supervisor; the complaint charged an assault and battery by Whitfield, resulting in serious inju-

ries to McKinney.[1] Whitfield moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure of the complaint to state a claim upon which relief can be granted.

The District Court granted Whitfield's motion, reciting the rule that "a federal official is absolutely immune from liability for those tortious acts falling within the 'outer perimeter' of his authority."[2] Defendant's conduct fell within the zone of his discretionary authority, the District Court determined, because it occurred in the context of a supervisor-employee dispute about a proposed personnel action—the temporary lay-off of McKinney. We hold that the District Court delineated an over-large area for this official's line of duty; accordingly, we reverse the order dismissing McKinney's complaint and remand the case for further proceedings.

## I.

The incident prompting McKinney's complaint occurred on February 25, 1982. An FAA funding shortage necessitated the temporary lay-off without pay of non-essential employees. On the day in question, appellee Whitfield instructed McKinney to come to his office to discuss her proposed "furlough" and to sign a letter acknowledging that she had been advised of her rights regarding the forthcoming personnel action. The record reveals a history of strained relations between McKinney and Whitfield. The day of the episode in suit proved no exception. After a tense exchange in Whitfield's office, McKinney signed the acknowledgment letter. She then began to walk away, at which point the letter dropped to the floor.[3] Whitfield ordered McKinney to pick up the paper. McKinney did not do so; instead, she fled down the hall towards her office with Whitfield in hot pursuit.

Once inside McKinney's office, Whitfield either fired or threatened to fire her.[4] McKinney then attempted to leave her office to seek assistance from Whitfield's supervisor. Whitfield, however, informed McKinney that she was "not going anywhere," and allegedly pushed an office chair into her leg to prevent her exit. McKinney recounts that Whitfield persisted in blocking her way out. When she ducked to escape, she alleges, he gripped and twisted her arm, causing her to suffer severe pain and serious physical injury.[5]

After unsuccessfully pursuing her administrative remedies, McKinney filed suit in the District Court seeking compensatory and punitive damages. Whitfield moved to dismiss the complaint, arguing that his blanket entitlement to absolute immunity was essential to the unimpeded "effective functioning of the government." Defendant's Memorandum in Support of Motion to Dismiss at 7. The District Court granted Whitfield's motion; it relied on "the long line of cases starting with *Barr v. Matteo*" indicating that "absolute immunity applies to all common law torts so long as they are committed within the outer perimeter of the official's authority." Memorandum Order, Civil Action No. 82–3016, at 2 (D.D.C. Sept. 23, 1983) ("Memorandum Order").

In holding Whitfield's conduct totally sheltered from liability in a common law tort action, the District Court focused upon "the specific supervisor-employee context"

---

1. Federal court subject-matter jurisdiction is founded upon diversity of citizenship. *See* 28 U.S.C. § 1332 (1982).

2. Memorandum Order, Civil Action No. 82–3016, at 2 (D.D.C. Sept. 23, 1983) (citing *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959))..

3. McKinney claims Whitfield dropped the "furlough" notice on the floor, Appellant's Brief at 2; the Grievance Examiner investigating McKinney's complaint found that she had thrown the letter to the floor, *see* Appellee's Brief at 3 n. 4. Resolution of this factual dispute is of no moment to our disposition of the case.

4. *Compare* Appellant's Brief at 3 (Whitfield actually fired McKinney) *with* Appellee's Brief at 4 (appellee merely threatened to fire her).

5. McKinney stated that Whitfield's grasp caused "abrasions and swelling of the left arm" and exacerbated an injury she had sustained years earlier. Plaintiff's Answers to Defendant's Interrogatories Nos. 3, 6.

in which McKinney's alleged injuries occurred. *Id.* at 4. "[P]revent[ing] [plaintiff] physically from leaving her office with issues left unresolved," the District Court declared, "f[ell] within the 'outer perimeter' of defendant's authority," albeit perhaps "near the 'extreme edge.'" *Id.* (referring to *Blatchford v. Guerra,* 548 F.Supp. 406 (S.D.Fla.1982)). McKinney appealed the District Court's judgment.

## II.

*Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), relied upon by the District Court, is the fountainhead Supreme Court decision affording federal officials absolute immunity from common law tort liability. In a series of mid 1970's decisions, the Supreme Court generally rejected *state* officials' pleas of absolute immunity from civil liability for torts committed in alleged violation of a plaintiff's *constitutional* rights. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). This series of decisions fueled debate earlier generated in commentary over the soundness, breadth, and continued vitality of *Barr. See, e.g., Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289, 303 (D.C.Cir.1977) (en banc) (Wilkey, J., concurring), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978) (*"Expeditions Unlimited"*).

In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), however, the Supreme Court appeared to assume *Barr's* endurance. The plaintiff in *Butz* sought damages from high-ranking Agriculture Department officials (including the Secretary) for conduct alleged to violate the plaintiff's constitutional rights. Despite the nonfrivolous charge of *constitutional* violations, the defendants asserted total immunity from civil liability. The High Court held the officials (other than those acting in a judicial or prosecutorial capacity) entitled to assert only qualified, not absolute, immunity; it distinguished *Barr* as a decision involving only "state tort claims." *See id.* at 494–95, 98 S.Ct. at 2904–05; *see also Harlow v. Fitzgerald,* 457 U.S. 800, 807–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982) (signalling that *Barr* remains good law).[6] This court has specifically held that "the doctrine of absolute immunity from common law torts survives [*Butz*]." *Sami v. United States,* 617 F.2d 755, 770 (D.C.Cir.1979).[7] McKinney's complaint, we note, advances only a common law claim; she alleges no conduct in contravention of constitutional restraints.

In *Barr,* the Acting Director of the Office of Rent Stabilization resisted a libel action brought by former subordinates based on a press release issued under defendant's directions. The Court held the Acting Director absolutely immune from civil damages liability for the alleged defamation. Lower federal court decisions have accorded *Barr* a generous reception in two respects: both the persons sheltered and the torts covered have been expansively interpreted.

Emphasizing statements contained in the *Barr* opinion, *see* 360 U.S. at 572–74, 79 S.Ct. at 1340–41,[8] lower federal courts have extended the absolute immunity defense to

---

**6.** *Cf. Nixon v. Fitzgerald,* 457 U.S. 731, 747 n. 25, 102 S.Ct. 2690, 2700 n. 25, 73 L.Ed.2d 349 (1982) (noting that *Butz* distinguished the absolute immunity rule of *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), on the ground that the earlier decision involved a common law claim).

**7.** Other federal courts have similarly interpreted *Butz. E.g., Miller v. DeLaune,* 602 F.2d 198, 199–200 (9th Cir.1979) (per curiam); *Granger v. Marek,* 583 F.2d 781, 784 (6th Cir.1978); *Plourde v. Ferguson,* 519 F.Supp. 14, 18–19 (D.Md.1980);

*Edwards v. Reynaud,* 463 F.Supp. 1235, 1239 (E.D.La.1979).

**8.** The Court commented:

> It is not the title of his office but the duties with which the particular officer ... is entrusted ... which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity ....

360 U.S. at 573–74, 79 S.Ct. at 1340–41.

"executive officials at all levels" of the federal hierarchy. *Expeditions Unlimited*, 566 F.2d at 307 (Wilkey, J., concurring); *see, e.g., id.* (Chairman of the Anthropology Department at the Smithsonian Museum of Natural History); *Bishop v. Tice*, 622 F.2d 349 (8th Cir.1980) (Occupational Safety and Health Administration regional auditor and regional administrator); *Berberian v. Gibney*, 514 F.2d 790 (1st Cir.1975) (Internal Revenue Service officer); *Litvak Meat Co. v. Padilla*, 470 F.Supp. 1040 (D.Colo.1979) (Department of Agriculture meat inspector). In light of this precedent, the District Court correctly assumed as its starting premise that Whitfield's FAA job supervisor position entitled him to assert *Barr* in defense of actions not manifestly beyond his line of duty.

*Barr* itself dealt only with the tort of defamation. *See* 360 U.S. at 574, 79 S.Ct. at 1341; *id.* at 577, 79 S.Ct. at 1342 (Black, J., concurring) (absolute immunity appropriate because of importance of "informed public opinion" to "effective functioning of a free government"). Lower federal courts have brought within *Barr*'s compass "any common law tort." *Expeditions Unlimited*, 566 F.2d at 300 (Robinson, J., concurring); *accord Miller v. DeLaune*, 602 F.2d 198, 200 (9th Cir.1979) (per curiam); *Plourde v. Ferguson*, 519 F.Supp. 14, 17 (D.Md.1980). Federal officials have successfully raised *Barr* as a defense to a full range of common law delicts: negligence;[9] malicious use of process;[10] tortious inter-ference with business;[11] false arrest, false imprisonment, and malicious prosecution;[12] blackmail, fraud, and intimidation;[13] and, under some circumstances, assault and battery.[14]

But the *Barr* opinion acknowledged limits to an executive officer's absolute immunity from common law tort liability; federal officials are protected only if their actions are "taken ... within the outer perimeter of [their] line of duty." *Barr*, 360 U.S. at 575, 79 S.Ct. at 1341. In *Butz*, the Court restated that *Barr* did not "purport[ ] to abolish the [common law] liability of federal employees for actions manifestly beyond their line of duty; ... they are accountable when they stray beyond the plain limits of their statutory authority." *Butz*, 438 U.S. at 495, 98 S.Ct. at 2905. Thus, physical contact batteries may qualify for absolute immunity when administered by federal security or law enforcement officers whose job it is to maintain order and the public peace.[15] *See Skolnick v. Campbell*, 398 F.2d 23 (7th Cir.1968) (deputy court marshal); *Plourde v. Ferguson*, 519 F.Supp. 14 (D.Md.1980) (Air Force Base Exchange detective and military police). We are confident, however, that "the outer perimeters of [office supervisor Whitfield's] line of duty" stop short of the physical coercion of subordinate managerial employees.[16] Federal personnel regulations nowhere sanction the use of physical force by desk supervisors; on the contrary, they

---

**9.** *E.g., Garner v. Rathburn*, 346 F.2d 55 (10th Cir.1965).

**10.** *E.g., Berberian v. Gibney*, 514 F.2d 790 (1st Cir.1975).

**11.** *E.g., Granger v. Marek*, 583 F.2d 781 (6th Cir.1978); *Galella v. Onassis*, 487 F.2d 986 (2d Cir.1973).

**12.** *E.g., Galella v. Onassis*, 487 F.2d 986 (2d Cir.1973) (false arrest, malicious prosecution); *Plourde v. Ferguson*, 519 F.Supp. 14 (D.Md.1980) (false imprisonment, malicious prosecution).

**13.** *E.g., Miller v. DeLaune*, 602 F.2d 198 (9th Cir.1979) (per curiam).

**14.** *E.g., Wallen v. Domm*, 700 F.2d 124 (4th Cir.1983) (per curiam) (assault); *Skolnick v. Campbell*, 398 F.2d 23 (7th Cir.1968) (assault and battery); *Plourde v. Ferguson*, 519 F.Supp. 14 (D.Md.1980) (same).

**15.** Federal law enforcement officers, like their state counterparts, may claim only qualified immunity from suits alleging *constitutional* violations. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339 (2d Cir.1972) (on remand); *see also Pierson v. Ray*, 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967).

**16.** Appellee's job description indicates neither a need for, nor an authorization of, physical force.

provide that "every management action affecting employees [should be] free from coercion." Federal Personnel Manual ch. 250, § 2–2(b)(17).

Federal courts have used a "functional" approach to determine the reach of *Barr;* absolute immunity is not extended "without some inquiry into the need of the immunity to forward legitimate purposes of the office." *Ricca v. United States,* 488 F.Supp. 1317, 1327 (E.D.N.Y.1980); *accord Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1346 (2d Cir.1972) (on remand); *Carter v. Carlson,* 447 F.2d 358, 362 (D.C.Cir. 1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). In *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), the Supreme Court, holding the President of the United States absolutely immune from constitutional claims, cautioned that "the sphere of protected action must be *related closely* to the immunity's justifying purposes." *Id.* at 755, 102 S.Ct. at 2705 (emphasis added). We perceive no close relationship between appellee's alleged battery and "the effective functioning of government." *See Barr,* 360 U.S. at 573, 79 S.Ct. at 1340.[17]

■ The District Court observed that Whitfield's actions "may lie near the 'extreme edge'" of "the 'outer perimeter' of [his] authority," Memorandum Order at 4; it nonetheless thought absolute immunity appropriate because the alleged battery arose within "the specific context of the employment situation" and "separating supervisory goals from the means of achiev-

ing them" would be "difficult[ ]." *Id.* at 5. We hold that separation of supervisory goals from supervisory means is required in the setting presented here; we do not believe that drawing the distinction, when superior-subordinate desk employee relations are at stake, involves untoward "difficulty."

The District Court's finding that the battery McKinney charged arose in an employment context is uncontested. Under established precedent, Whitfield unquestionably would be entitled to absolute immunity from common law tort liability for certain conduct taken in the course of administering the FAA's "furlough" plan.[18] However, Whitfield's general engagement in supervision within the scope of his authority does not cloak with immunity the specific conduct at issue—his resort to manifestly *excessive means;* a contrary rule would drift away from the moorings of the functional approach. *Cf. McSurely v. McClellan,* 553 F.2d 1277 (D.C.Cir.1976) (en banc) (although information gathering activities of Senate Committee investigator generally qualify for absolute immunity under Speech or Debate Clause, money damages may be available when means selected violate Fourth Amendment), *cert. dismissed as improvidently granted sub nom. McAdams v. McSurely,* 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978).

Our immunity analysis is supported by an Eighth Circuit decision in point, *Bishop v. Tice,* 622 F.2d 349 (8th Cir.1980). In that case, a federal safety engineer claimed that two Occupational Safety and Health Administration regional auditors and a region-

---

**17.** We do not follow two slimly-reasoned published district court decisions holding Postal Service supervisors absolutely immune from battery suits. *Blatchford v. Guerra,* 548 F.Supp. 406 (S.D.Fla.1982); *Bagwell v. Brannum,* 533 F.Supp. 362 (N.D.Ga.1982). *Wallen v. Domm,* 700 F.2d 124 (4th Cir.1983) (per curiam), attributed substantial weight by the District Court here, is readily distinguishable. *Wallen* involved an assault claim, but no allegation of physical contact. We think it evident that compelling federal officials to defend suits alleging heated discussion and threatening gesture

would place a noticeably greater damper on the exercise of supervisory discretion than merely holding such officials accountable for physical intrusions.

**18.** For example, if Whitfield had responded to appellant's alleged insubordination by filing an adverse performance evaluation, he probably could have asserted successfully absolute immunity from liability in a defamation action. *Cf. Lawrence v. Acree,* 665 F.2d 1319 (D.C.Cir.1981).

al administrator induced him to resign by threatening to press against him false criminal charges; their purpose, allegedly, was to create a job vacancy to be filled at the administrator's direction. The safety engineer sued under a variety of common law theories (defamation, interference with contract, and conspiracy to defraud and deceive),[19] and defendants raised *Barr v. Matteo* as one of their defenses. Following a trial court dismissal, the Eighth Circuit ruled that *Barr* was "of no comfort to defendants" since, taking plaintiff's allegations as true, defendants had gone "clearly beyond [their authority]." 622 F.2d at 359. Even though federal supervisors are generally entitled to absolute immunity "from liability in tort for actions relating to the discharge of their subordinates," the court stated, "absolute immunity is lost when a supervisor adopts *means* beyond the outer perimeter of his authority." *Id.* at 359 (emphasis added).

In summary, we reject the District Court's view that a means/end distinction is too difficult to draw in the context of relations between superior and subordinate desk employees. Whitfield urges, however, that the rationale of *Barr* nonetheless reaches his alleged attempt, through physical coercion, to keep McKinney within his reach so that she would stop, look at him, and listen to his instructions. He predicts that requiring federal government supervisors to defend themselves against battery charges will "pave the way for countless abuses by employees of their supervisors." Defendant's Memorandum in Support of Motion to Dismiss at 7.

Whitfield's forecast strikes us as farfetched. We envision "no serious ham-

stringing of the activities" of federal government supervisors if they are ordered to answer in damages for battering their subordinates. *See Kelley v. Dunne,* 344 F.2d 129, 133 (1st Cir.1965) (postal inspector not absolutely immune from common law liability for knowingly misrepresenting that he had a warrant needed to search a home). Supervisors in Whitfield's position have available numerous means, short of physical coercion, for compelling the obedience of recalcitrant subordinates. McKinney was warned after the February 25 incident that future refusal to comply with supervisory instructions would result in disciplinary action.[20] The FAA Supervisor's Handbook apparently provides for suspension or termination as sanctions for employee insubordination.[21] Federal personnel regulations additionally authorize disciplinary actions in the form of reprimands and reductions in rank or pay. Federal Personnel Manual ch. 751, § 1–2.

### CONCLUSION

The rationale motivating *Barr*'s recognition of a federal official's absolute immunity from common law tort liability is the "further[ance] ... of effective administration of government in the public interest." *Expeditions Unlimited,* 566 F.2d at 292 (footnote omitted). Compelling federal supervisory officials to respond in damages when they visit physical coercion on subordinate desk employees should pose at most a "minimal" threat to government efficiency. *See Kelley v. Dunne,* 344 F.2d 129, 133 (1st Cir.1965). Accordingly, we hold that federal bureaucrats exceed the outer perimeters of their responsibilities, and act

---

**19.** *Bishop v. Tice* also presented a claim based on the Constitution. The Eighth Circuit discretely analyzed the immunity issue in each context. As to the alleged constitutional tort, the appellate court also denied absolute immunity. *See* 622 F.2d at 360.

**20.** *See* Official Letter of Warning from William A. Plissner, Director of Budget, to Iris McKin-

ney, Budget Review and Reports Staff (Apr. 30, 1982), *annexed to* Defendant's Memorandum in Support of Motion to Dismiss.

**21.** *See* Report of Findings and Recommendations in the Grievance of Ms. Iris N. McKinney at 8 (July 23, 1982), *annexed to* Plaintiff's Opposition to Defendant's Motion to Dismiss.

manifestly beyond their line of duty, when they resort to physical force to compel the obedience of their managerial subordinates.[22]

For the reasons stated, the judgment of the District Court is reversed and the case remanded with instructions to reinstate the complaint and for further proceedings consistent with this opinion.

*It is so ordered.*

22. We have no occasion to decide when a federal official's employment responsibilities are such that the use of physical force is within the outer perimeters of authority; Whitfield's duties assuredly do not necessitate such latitude.