**Conley EDWARDS, Jr., Plaintiff,**

v.

**Kenneth A. GROSS, Defendant.**

**Civ. A. No. 85–1503.**

United States District Court,
District of Columbia.

March 14, 1986.

---

**268**

James M. Fallon, Washington, D.C., for plaintiff.

Robert Erickson, Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

This case comes before the Court on plaintiff's motion for remand and defendant's motion to dismiss or in the alternative, for summary judgment. Plaintiff does not object to the Court's jurisdiction in this matter but rather uses the motion for remand to argue opposition to immunity in this case. Because the defendant has a right to removal, absent any valid question regarding jurisdiction, the motion for remand is denied. The defendant cites to improper service, insufficient pleadings and absolute immunity as grounds for dismissal. The plaintiff argues, inter alia, that the defendant assaulted and battered him during an employment confrontation, and therefore, pursuant to the holding in *McKinney v. Whitfield,* 736 F.2d 766 (D.C. Cir.1984), immunity is not applicable. This Court does not read the *McKinney* holding so narrowly and believes the facts in the two cases can be distinguished. After careful consideration of the motion, the opposition thereto and the record, the Court concludes that Mr. Gross was acting within the outer perimeters of his official duties. Consequently, he is entitled to absolute immunity which bars this claim. As a result, the issues of service of process and insufficient pleadings need not be addressed.

### I

Viewing the facts in a light most favorable to the plaintiff, *Erco Industries Ltd. v. Seaboard Coast Line R. Co.,* 644 F.2d 424, 428 (5th Cir.1981), they are as follows: Plaintiff, Conley Edwards, Jr., was a paralegal specialist assigned to the Federal Election Commission Enforcement Section of the Office of Federal Counsel, in Washington, D.C.. His responsibilities included; the analysis of external and internal complaints charging violations of the Federal Election Campaign Act; legal researching; monitoring case progress and writing briefs on assigned cases. Edwards' Declaration, Section 2, Plaintiff's Opposition to Defendant's Motion to Dismiss/Summary Judgment (hereinafter "Edwards' Declaration") Defendant, Kenneth Gross was, and presently is, employed as the Associate General Counsel for the Federal Election Commission, in charge of the General Counsel's Enforcement Section. His responsibilities as head of the Enforcement Section include; acting as final authority on compliance matters, investigations, negotiations and recommendations relating to federal election law violation complaints; supervising and directing the legal work

product of the staff; and ensuring consistent application of the law in the enforcement area. Defendant's Exhibit B. By each party's account, the relationship between Mr. Edwards and Mr. Gross was less than conciliatory.

On November 27, 1984, Thomas Whitehead, plaintiff's immediate supervisor, issued a warning letter stating that plaintiff's work performance was unacceptable. On January 16, 1985, a notice of proposed removal was sent. Final approval for termination based on unacceptable performance and insubordination occurred on February 26, 1985. Effective March 1, 1985, plaintiff was removed from his position. Defendant's Exhibit A, Sections 2, 3, 4.

The sequence of events, central to this lawsuit, began on January 17, 1985, when plaintiff entered Mr. Whitehead's office and removed the team "logbook". The logbook is maintained by team members to monitor the actions taken on assigned cases. Edwards' Declaration, Section 15; Defendant's Exhibit A, Section 5. Although it appears certain that the plaintiff had the authority to review the contents of the logbook, plaintiff's sole purpose for transporting the logbook to the xerox room for copying was to gather evidence to controvert the insubordination charges against him. Edwards' Declaration, Sections 15, 17.

While making copies of the logbook, Mr. Gross confronted Mr. Edwards and asked him what he was doing. Plaintiff replied that he was "photocopying the logbook pages pertaining to (his) cases." Edwards' Declaration Section 16. Both parties agree that defendant demanded the logbook and plaintiff clearly refused. Subsequent to his refusal, the plaintiff alleges that the defendant, "grabbed a log sheet from (his) hand ... slammed his hand down on the open book ... reached around the side of the machine to collect (his) copies from the paper tray ... grabbed (him) ... and tried to physically wrench the papers from (his) right hand ..." Plaintiff then made a demand to be released and defendant complied. Edwards' Declaration, Section 16.

Further verbal demands and threats allegedly ensued as plaintiff retreated from the xerox room with defendant in close pursuit. However, no further physical confrontation resulted. Edwards' Declaration, Section 16. After written demand and the passage of more than a week, the plaintiff returned the remaining copies in his possession. The information in the logbook, hence in the copies made thereof, is protected from public access by 2 U.S.C. §§ 437g(a)(12)(A), (B) and 437g(a)(4)(B). Portions of the applicable statute read as follows:

> (A) Any notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made.

> (B) Any member or employee of the Commission, or any other person who violates the provisions of subparagraph (A) shall be fined not more than $2,000. Any such member, employee, or other person who knowingly and willfully violates the provisions of subparagraph (A) shall be fined not more than $5,000.

2 U.S.C. §§ 437g(a)(12)(A), (B).

## II

The plaintiff has correctly cited *McKinney*, 736 F.2d 766 (D.C.Cir.1984), as the controlling case on the issues presented. However, as the *McKinney* Court noted, *id.* at 768, any inquiry into the scope of federal employees' immunity for common law torts must initially address the reasoning set down in the landmark Supreme Court decision, *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Although the extensive umbrella of official immunity diminished under subsequent Supreme Court rulings the protection afforded federal officials from common law tort liability remained intact. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *McKinney*, 736 F.2d at 768.[1] The rule set down in *Barr* now em-

---

**1.** The plaintiff in *Butz* claimed constitutional violations and the Supreme Court asserted that

braces executive officials at all levels of the federal hierarcy and any common law tort. *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289 (D.C.Cir.1977) (en banc), *cert. denied* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Bishop v. Tice,* 622 F.2d 349 (8th Cir.1980). Implicit in the *Barr* holding is the understanding that protection from common law tort liability only extends to actions taken "within the outer perimeter" of an officer's line of duty. *Barr,* 360 U.S. at 575, 79 S.Ct. at 1341. Therefore, the pivotal question in a court's analysis of such matters must be whether the actions taken stray beyond the plain limits of the official's authority.

The complaint before this Court alleges assault and battery. The *McKinney* Court advanced strong support for applying immunity in assault claims. *McKinney,* 736 F.2d at 770. *See also Araujo v. Welch,* 742 F.2d 802 (3d Cir.1984); *Plourde v. Ferguson,* 519 F.Supp. 14 (D.Md.1980). Citing to *Wallen v. Domm,* 700 F.2d 124 (4th Cir.1983), and distinguishing assault from battery actions, the Court stated "[w]e think it evident that compelling federal officials to defend suits alleging heated discussion and threatening gestures would place a noticeably greater damper on the exercise of supervisory discretion than merely holding such officials accountable for physical intrusions." *McKinney,* 736 F.2d at 770, n. 17. Bearing this in mind with respect to the assault charges lodged against Mr. Gross, the Court now turns to the more germane issue in this case; whether the battery alleged here can be distinguished from the *McKinney* "physical coercion" battery held to be manifestly beyond a supervisor's duties. This Court

concludes that a distinction can and should be drawn.

In order to ascertain the proper scope of immunity, the *McKinney* Court first examined the purpose underlying the privilege to forward productive office functioning. *McKinney,* 736 F.2d at 770 (quoting *Ricca v. United States,* 488 F.Supp. 1317, 1327 (E.D.N.Y.1980).[2] The rationalization buttressing the privilege is that government officials would not freely exercise their duties if they feared the threat of constant, oftentimes frivolous, damage suits.[3] Consequently, immunity was designed to aid in the effective functioning of government. *Barr,* 360 U.S. at 571, 79 S.Ct. at 1339. Logically, the duties must also be necessary to the office functioning before the need for immunity makes any sense. The contours of an officer's authority can thereby be marked by determining in each situation whether immunity is justified. The *McKinney* Court concluded no close relationship existed between a supervisor's physical coercion to compel a subordinate's attention and the effective functioning of government. *McKinney,* 736 F.2d at 770. It is obvious from the facts why such a conclusion was drawn.

In *McKinney,* the plaintiff employee charged her supervisor with assault and battery for actions arising during a heated employment dispute. After an altercation fraught with verbal threats, plaintiff sought to leave the supervisor's office. In an attempt to block her exit defendant pushed an office chair into her legs and then twisted her arm. Such actions are obviously not envisioned nor warranted in a legitimate office milieu.

The facts in the case before this Court warrant a different conclusion. Plainly,

---

absolute immunity did not apply. It distinguished *Barr* as a state tort claim and thereby impliedly affirmed that *Barr* remained good law. *Butz,* 438 U.S. at 494–95, 98 S.Ct. at 2904–05.

**2.** In *Araujo v. Welch,* 742 F.2d 802 (3d Cir.1984), the Court decided against immunity on a battery charge where the record showed *no evidence to justify the action, nor any legitimate purpose by allowing the plaintiff immunity from*

*suit* for physically abusing a civilian employee during a conversation about past work performance. *Id.* at 806.

**3.** The *Barr* Court stated, "... it has been thought in the end better to leave unredressed the wrongdoings by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation" *Barr,* 360 U.S. at 573, 79 S.Ct. at 1340.

the supervisors in both fact patterns were acting in their employment environment and against an allegedly contumacious employee. The significant distinction between the cases is that the focus of the confrontation between Mr. Gross and Mr. Edwards was an object not a person; the confidential material recorded in the logbook. In plaintiff's own words, Mr. Gross "slammed his hand down on the open book to demonstrate his intent to take possession of it", grabbed the plaintiff and "tried to physically wrench the papers from his right hand." The purpose of the alleged force against the plaintiff was to regain possession of the office records, that an employee, soon to be terminated, would not surrender. As Associate General Counsel of the Enforcement Division is Mr. Gross vested with the authority to take actions directly related to the confidential work product? Reading the statutory mandate for confidentiality, 2 U.S.C. §§ 437(g)(A), (B) and the Associate General Counsel of the Enforcement Division job description, together, the question must be answered in the affirmative.[4] Once the scope of the power is defined the true intentions of the parties need not be scrutinized. *Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983); *Barr,* 360 U.S. at 572–73, 79 S.Ct. at 1340.

**4.** *Any* person may use reasonable force against another for the purpose of recaption of chattel, where the other has rightfully acquired "custody" of the chattel but thereafter wrongfully takes possession *by refusing to surrender the chattel.* Restatement (Second) of Torts § 108 Comment b (1965). The facts of this case would support a finding of reasonable force.

**5.** As the Court in *Wallen v. Domm,* 700 F.2d 124 (4th Cir.1983) remarked, few government officials are authorized to commit torts as a part of their line of duty, but to separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of authority—would effectively emasculate the immunity defense. *Id.* at 126. Reviewing the entire circumstances as a whole, in the shoes of Mr. Gross, is it unreasonable that he attempted self help? Mr. Edwards also had numerous choices available for compelling the records he claimed were necessary to create his defense. He made the choice to refuse to surrender the materials when the division supervisor demanded them.

Although alternate means existed to retrieve the logbook and copies, because Mr. Gross had the responsibility "to insure consistent application of the law in the enforcement area", this Court will not in hindsight cogitate his choice.[5] Additionally, it is important to note that with this holding, the Court is not condoning the use of excessive physical force on subordinates as a remedy for a lawful purpose and clearly not for an unjustified purpose. Excessive means is beyond the purview of an official's authority.[6]

## II

After all the dust has settled and the courts are approached to apply the salve, each confrontation must be analyzed on a case by case basis. Where a supervisor uses physical coercion so that an employee will stop, look at him, and listen there is no "serious hamstringing of government activities" to require the officer to answer in damages. *McKinney,* 736 F.2d at 771. However, the goal of *Barr* is emasculated if the courts draw bright line rules and do not assess each case situation to discern if the officer was attempting to uphold his statutory duty. The *McKinney* Court left room to allow immunity in future battery cases when it stated, "(w)e have no occa-

**6.** Clearly, had excessive force been exerted the defendant might not be protected by absolute immunity. Even acts normally protected by immunity are actionable when the official uses excessive means to effectuate his goal. *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981) (law enforcement officer's undue force deprived victim of liberty without due process of law and thereby subjected the officer to suit): *McSurely v. McClellan,* 553 F.2d 1277 (D.C.Cir.1976) (en banc) (senate investigators investigation, although normally protected by absolute immunity will not be protected when the means selected violate the fourth amendment) *cert. dismissed as improvidently granted sub nom. McAdams v. McSurely,* 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978); *Bishop v. Tice,* 622 F.2d 349 (8th Cir.1980) (officer's coercion of employee to leave his job, by threatening to lodge false criminal charges against him stated actionable damages claim).

sion to decide when a federal official's employment responsibilities are such that the use of physical force is within the outer perimeters of authority" *McKinney*, 736 F.2d at 772, n. 22.

Based on the record, this Court determines that defendant Gross was acting within the outer perimeter of his duties and is thereby entitled to absolute immunity. This claim is therefore barred and defendant's motion is granted.

### ORDER

This comes before the Court of the plaintiff's motion to remand and the defendant's motion to dismiss or in the alternative, for summary judgment. After giving careful consideration to the motions, the oppositions thereto, and the record in this case, the Court concludes, for the reasons set forth in the accompanying memorandum, that the plaintiff's motion should be denied and the defendant's motion for summary judgment should be granted. In view of the above, it is hereby

ORDERED that the plaintiff's motion is denied, and it is further

ORDERED that the defendant's motion for summary judgment is granted, and it is further

ORDERED that this case is dismissed with prejudice.