United States Court of Appeals,

Fifth Circuit.

No. 92-3748.

FERROMET RESOURCES, INC., Plaintiff-Appellee, Cross-Appellant,

v.

CHEMOIL CORPORATION and Hollywood Marine, Inc., Defendants-Appellants, Cross-Appellees.

Oct. 29, 1993.

Appeals from the United States District Court For the Eastern District of Louisiana.

Before GARWOOD, DAVIS, and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Chemoil Corporation (Chemoil) and Hollywood Marine, Inc. (Hollywood) appeal the judgment of the district court granting Ferromet's motion for summary judgment in an action to recover damages for detention of a vessel. We vacate and remand.

I.

Ferromet was the time charterer of the M/V PANTAZIS L (PANTAZIS). The time charter specifically prohibited Ferromet from incurring any liens on the ship. Ferromet, through its chartering agent, Jansen Chartering, contracted with Associated Bunkeroil Contractors (ABC) to furnish bunkers for the vessel. This contract was subject to ABC's standard clauses, including a provision that the sale of bunkers is "made on the credit of the receiving vessel" and is subject to all security rights.

Chemoil was contacted to provide bunkers to the PANTAZIS for the account of ABC. Chemoil agreed to bunker the vessel subject to its standard sales agreement which also includes a provision securing the sale of bunkers on the credit of the vessel and subjecting the vessel to a maritime lien for bunkering charges.

Chemoil directed Hollywood, its barge contractor, to deliver the bunkers to the PANTAZIS. On the evening of November 2 and morning of November 3, the BARGE HOLLYWOOD 212, in tow of a tug, moored alongside the PANTAZIS and transferred the bunkers to the ship. According

to Ferromet's summary judgment evidence, the PANTAZIS crew notified the HOLLYWOOD crew of its status as a time charterer and its inability to bind the vessel in rem before fuel delivery began. Chemoil denied that Ferromet gave such notice to HOLLYWOOD until after fuel delivery was complete at around 4:30 a.m. on Sunday, November 3, 1992. It is undisputed that when HOLLYWOOD completed delivery of the fuel, the captain of the PANTAZIS returned the fuel receipt to the HOLLYWOOD crew with a stamp that read:

> These services and/or supplies were ordered by time charterers for their sole purpose and expense vessel/owners [sic] do not guarantee payment.

Hollywood immediately notified Chemoil of the receipt. Chemoil was concerned that acceptance of the stamped receipt might destroy its right to a maritime lien. Chemoil's representative instructed HOLLYWOOD to remain attached to the ship until either 1) the above-mentioned clause was deleted from the bunker receipt, 2) other arrangements for prompt payment were made, or 3) the fuel was returned to the barge.

Negotiations continued between Ferromet, Chemoil and Hollywood representatives for two and a half days until Ferromet agreed to pay the entire purchase price of the bunkers and provide security for Chemoil's claim for bunker barge demurrage during the negotiations. The barge then released the ship, two and a half days after fueling was complete.

Ferromet filed suit against both Chemoil and Hollywood alleging that defendants had committed a maritime tort as well as intentionally interfered with Ferromet's contractual rights. Ferromet sought to recover the charterhire it paid during the two and a half days the ship was detained as well as other expenses incurred as a result of the delay. Both sides filed motions for summary judgment.

The district court granted summary judgment in favor of Ferromet, holding that no set of facts could justify Chemoil and Hollywood's self-help actions in detaining the PANTAZIS. Chemoil and Hollywood filed a timely appeal, and Ferromet filed a cross appeal seeking an increase in damages.

II.

We review a summary judgment de novo, applying the same criteria as would a district court. *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). Summary

judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under the Federal Maritime Lien Act, 46 U.S.C.App. § 971 et seq., any person furnishing necessaries such as fuel to a vessel shall have a maritime lien on the vessel. The ship's master or other person, such as a charterer, to whom the vessel is entrusted is presumed to have authority to purchase necessaries to the credit of the vessel. The materialman who furnishes necessaries in response to a request from a master, charterer or other person in custody of the vessel has no duty to inquire about that person's authority to bind the vessel. (§ 973). But the supplier's lien is defeated if he has actual knowledge that the person ordering the necessaries has no authority to bind the vessel. *Gulf Oil Trading Co. v. M/V CARIBE MAR,* 757 F.2d 743 (5th Cir.1985).

Thus, when Chemoil learned from Hollywood that the vessel's master had stamped a message on the fuel receipt indicating that the custodian of the vessel was without authority to purchase supplies on the vessel's credit, Chemoil was concerned that its fuel sale would not be secured by a maritime lien on this vessel. This concern was justifiable on two fronts: First, the receipt could support an argument that the master told the supplier of his lack of authority to incur liens before the sale was completed. If this argument were accepted, the lien would not arise. Alternatively, the ship could argue that acceptance of the receipt even after the fuel was delivered acted as a waiver of the lien by the supplier. See *Marine Fuel Supply & Towing, Inc. v. M/V KEN LUCKY,* 859 F.2d 1405 (9th Cir.1988).

In sum, under Chemoil's version of the facts, Chemoil and Hollywood were justified in concluding that Ferromet had tricked them into delivering bunkers to the vessel with the promise of a lien only to have the lien destroyed by Ferromet's breach of its promise.

Ferromet argues that even if it tricked Chemoil into delivering the fuel by promising a lien and then reneging on that promise, Chemoil was not justified in resorting to self help and forcibly detaining the ship. The law ordinarily does not favor self help. But this is not universally so. The Restatement of Torts recognizes that a party may use reasonable force against another to recapture

assets wrongfully taken in very limited circumstances:

> 1) The use of reasonable force against another for the purpose of recaption is privileged if the other
>
>> a) has tortiously taken the chattel from the actor's possession without claim of right, or under claim of right but by force or other duress or fraud, ...

Restatement (Second) of Torts, § 101 (1965). The force used must be reasonable under the circumstances. Id. Certainly force calculated to cause serious bodily harm would never be justified to recapture property. Further, the privilege only exists if the possession is taken wrongfully, such as by theft or fraud. Id. See also Prosser & Keaton on the Law of Torts § 22 (5th Ed.1984). Courts, in applying this rule, have held that a merchant or his agent has a right to use nondeadly force to retrieve stolen goods or to detain a suspect for a reasonable length of time to investigate. *Montgomery Ward & Co. v. Freeman,* 199 F.2d 720, 723-24 (4th Cir.1952). *See also, Edwards v. Gross,* 633 F.Supp. 267, 271 (D.D.C.1986) (employer privileged to use reasonable force to take back documents from an employee who wrongfully refused to surrender them).

If Ferromet did not give notice of its lack of authority to incur liens before the fuel was delivered and tried to get Hollywood to accept a bunker receipt that threatened the maritime lien, then Ferromet wrongfully interfered with Chemoil's right to security which Ferromet had contractually agreed to provide. Under these circumstances where Ferromet procured Chemoil's fuel by promising that the sale would be to the credit of the vessel, Ferromet wrongfully obtained possession of Chemoil's property. Under Restatement (Second) of Torts § 101, Chemoil was entitled to use reasonable force to get back its property. Therefore, assuming these predicate facts, Chemoil acted reasonably in ordering Hollywood to wait alongside the ship until the ship pumped the fuel back to the barge, furnished a receipt without the offending language, or other arrangements for payment were made.

A material issue of fact is presented on when Ferromet advised Hollywood that Ferromet was without authority to incur liens. If the district court finds that Ferromet did not give notice to Hollywood before the fuel was delivered of its lack of authority to bind the vessel in rem, Ferromet cannot recover for damages caused solely by its own wrongful acts in obtaining Chemoil's property.

If, on the other hand, the district court finds that Ferromet notified Hollywood before the fuel was delivered of its lack of authority to incur liens, then the district court may find that Chemoil had no justification for detaining the ship and Ferromet is entitled to recover damages for the delay.[1]

For the reasons stated above, we vacate the district court's summary judgment in favor of Ferromet and remand this case to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.

---

[1] If the district court awards damages to Ferromet, it should reconsider its damage award. Because of a typographical error, the district court apparently omitted awarding $260 for launch fees incurred in transporting the pilot to and from the vessel. We also see no reason for the court's failure to award Ferromet a pro-rata share of the ballast bonus for the two and a half day delay.